1
2
3
4
5
6
7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

9

10

DAYBREAK YOUTH SERVICES,
individually and on behalf of its former and
current patients,

11

NO.

12

Plaintiff,

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

13

v.

14

CHUCK ATKINS, in his official capacity as
Clark County Sheriff, MIKE COOKE, in his
official capacity as Clark County
Undersheriff, CHRISTOPHER LUQUE, in
his official capacity as Clark County Sheriff's
Office Sergeant, ADAM BECK, in his official
capacity as Clark County Sheriff's Office
Detective, and BRENT WADDELL, in his
official capacity as Clark County Sheriff's
Office Sergeant,

15

16

17

18

19

Defendants.

20

21        Plaintiff Daybreak Youth Services ("Daybreak"), by and through its attorneys, brings

22     this Complaint for declaratory and injunctive relief on behalf of itself and its current and former

23     substance use disorder ("SUD") patients, against Defendant Chuck Atkins ("Atkins") in his

24     official capacity as Sheriff of Clark County, Washington, Mike Cooke ("Cooke") in his official

25     capacity as Undersheriff of Clark County, Washington, Christopher Luque ("Luque"), in his

26     official capacity as Clark County Sheriff's Office ("CCSO") Sergeant, Adam Beck ("Beck"), in

GARVEY SCHUBERT BARER, P.C.
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

1  his official capacity as CCSO Detective, and BRENT WADDELL ("Waddell") (together,

2  "Defendants").

## INTRODUCTORY STATEMENT

4      Daybreak is a 501(c)(3) tax exempt and federally assisted program providing SUD

5  diagnosis and treatment to minor patients. As such, Daybreak's patient records are subject to

6  federal confidentiality laws specifically designed to subject SUD records to stringent

7  protections. These laws, promulgated in 42 U.S.C. 290dd-2 and 42 C.F.R. Part 2 ("Part 2"),

8  strictly limit disclosure of SUD records. As relevant to this case, these records cannot be

9  disclosed to or used by law enforcement absent an order by a court of competent jurisdiction

10  authorizing disclosure upon a determination that the stringent criteria of Part 2 have been

11  satisfied by the party seeking such disclosure. In flagrant violation of federal law, Defendants

12  Atkins, Cooke, Luque, Beck and Waddell are in possession of and using confidential and

13  illegally seized SUD patient records to harm and threaten to harm Plaintiff and its current and

14  former SUD patients under the false premise their actions were taken to protect Daybreak's

15  minor patients.

16      Defendants unlawfully seized all protected SUD patient records from Daybreak and its

17  service providers in September 2018 and are now using and disclosing federally protected

18  confidential information involving Daybreak and the vulnerable patients it serves to poison

19  Daybreak's relationship with valued community partners, discourage new patients from

20  entering treatment, and to generate publicity for themselves. Defendants' unlawful campaign of

21  harassment and self-promotion threatens to harm the private and public rights of Plaintiffs and

22  the community at large. By continuing to retain, use and disclose confidential and patient-

23  identifying records, and threatening to re-disclose such records, Defendants are brazenly

24  violating regulations specifically promulgated to ensure the effectiveness and viability of

25  important substance abuse disorder treatment programs. Defendants' conduct has already

26  caused injury to Daybreak and its current and former SUD patients, but now they are

GARVEY SCHUBERT BARER, P.C.
eighteenth floor
1191 second avenue
seattle, washington  98101-2939
206 464 3939

1   threatening to impose even greater harm as a result of their continued use and threatened future
2   use and re-disclosure of sensitive and federally-protected SUD patient records and patient-
3   identifying information. Plaintiff therefore requests that the Court declare Defendants' seizure
4   and continued retention, use and re-disclosure of confidential SUD patient records to be in
5   violation of 42 C.F.R. Part 2 ("Part 2"), and order Defendants to (1) return all records seized
6   from Daybreak in violation of Part 2; (2) destroy any copies of material seized in violation of
7   Part 2 from Daybreak; (3) cease any continued use of such information for investigatory or any
8   other purpose; and (4) make reasonable efforts to claw back and ensure the confidentiality of
9   confidential patient records re-disclosed to third parties.

10   **JURISDICTION AND VENUE**

11   1.      Subject matter jurisdiction is conferred on this Court by 28 U.S.C. § 1331,
12   42 U.S.C. § 290dd-2 and 42 C.F.R. Part 2, as Plaintiff's claims arise under Federal Regulations
13   pertaining to Confidentiality of Substance Use Disorder Patient Records.

14   2.      Plaintiff has prudential standing under 42 C.F.R. Part 2, including but not
15   limited to § 2.66(b).

16   3.      The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's
17   Washington State Superior Court Criminal Rule 2.3(e) Motion for Return of Property.

18   4.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (2) because
19   Defendants are subject to personal jurisdiction in this District and a substantial portion of the
20   conduct complained of herein occurred in this District.

21   5.      Plaintiff's claims for declaratory and injunctive relief are authorized by
22   28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and
23   by the general legal and equitable powers of this Court.

24   **PARTIES**

25   **Plaintiff**

26   6.      Plaintiff Daybreak is Washington State's oldest and largest youth residential

GARVEY SCHUBERT BARER, P.C.
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

1   treatment program for adolescents with co-occurring substance use disorder and mental health
2   disorders. Daybreak publicly holds itself out as providing, and provides, substance use disorder
3   diagnosis and treatment, serving more than 1,000 boys and girls each year at its facilities in
4   Spokane County and Clark County.

5       7.      In 1978, Plaintiff opened an outpatient facility in Spokane, which was later
6   expanded to provide inpatient care. In 1999, Daybreak opened a small inpatient treatment
7   facility in Vancouver, Washington. The Brush Prairie residential facility was added in 2017.
8   The Brush Prairie inpatient facility has a potential capacity of up to 56 youth. Outpatient
9   services are provided in Plaintiff's Clark County offices in Brush Prairie and Vancouver.

10      8.      Daybreak's inpatient program is regulated by the Washington State Department
11  of Health and the Division of Social and Health Services. The Brush Prairie facility's
12  Behavioral Health Agency licenses (Mental Health In Patient; Mental Health Out Patient;
13  Substance Use Disorder In Patient; Substance Use Disorder Out Patient) were renewed on
14  October 30, 2018; and its license as a Residential Treatment Facility was renewed on May 17,
15  2019. Daybreak is currently one of the only adolescent behavioral health organizations in
16  Washington State that offers the entire continuum of care services for adolescents with dual
17  diagnosis of SUD and mental health issues. Daybreak receives the majority of its funding
18  through government grants and federal Medicaid reimbursement, and is also assisted by the
19  Internal Revenue Service of the Department of the Treasury through the allowance of income
20  tax deductions for contributions to the program and the granting of tax exempt status to
21  Daybreak itself.

22      9.      Daybreak employs mental health and substance use disorder providers who, like
23  Daybreak itself, are individually bound to the federally mandated duty under 42 C.F.R. Part 2
24  to maintain the confidentiality of patient records and patient-identifying information.

25      10.     Daybreak has provided diagnosis, treatment, and/or referral for SUD treatment
26  to thousands of youth. Daybreak maintains its paper records and electronic records in a secure

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 4

1  and confidential manner to protect against the unlawful disclosure or use of patient-identifying

2  information related to its current and former SUD patients.

3  **Defendants**

4      11.    Defendant Atkins is the elected Sheriff of Clark County, Washington. Atkins

5  has announced that he will retire from office after his second term expires in 2022. Atkins has

6  been closely involved with his Office's 2018-2019 "investigation" of Daybreak, its staff, and

7  its patients, including the unlawful seizure, retention, use, and re-disclosure of confidential

8  patient records.

9      12.    Defendant Cooke is the Undersheriff of Clark County, Washington, and is

10  rumored to be positioning himself to replace Atkins as Sheriff in the 2022 election. Cooke was

11  apparently in charge of the execution of Clark County search warrants at Daybreak on

12  September 11, 2018.

13      13.    Defendant Luque is a Sergeant with the CCSO and was the affiant in support of

14  the search warrants executed at Daybreak on September 11, 2018, and, on information and

15  belief, is heavily involved in the "investigation" of Daybreak, its provider-employees, and

16  current and former SUD patients.

17      14.    Defendant Beck is a Detective with the CCSO. Beck has been heavily involved

18  in Defendants' "investigation" of Daybreak, its provider-employees, and current and former

19  SUD patients, including making contact with one or more former Daybreak patients and their

20  family using patient information unlawfully disclosed to him.

21      15.    Defendant Waddell is a Sergeant with the CCSO. On information and belief,

22  Waddell has been involved in Defendants' "investigation" of Daybreak, its provider-

23  employees, and current and former SUD patients. On information and belief, Waddell has been

24  involved in providing SUD patient records and/or patient-identifying information to third

25  parties and has provided information to the Columbian newspaper about his agency's

26  investigation of Daybreak.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 5

GARVEY SCHUBERT BARER, P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

## FACTS

**Daybreak has provided vital care for troubled youth in Washington since 1980.**

16.     Daybreak Youth Services is Washington State's oldest and largest youth residential psychiatric substance abuse and mental health provider. More than 1,000 troubled young people, ages 12 to 18, and their families turn to Daybreak every year for critical help with addiction and mental illness. Each year, Daybreak serves more than 600 youth in Clark County, in out-patient and residential treatment for boys and girls, and more than 450 youth in Spokane County, where residential treatment is offered only to girls.

17.     These young people are suffering from mental illness and from addiction. Three-quarters of the Clark County patients come from poverty, and their care is provided through Medicaid. Many of Daybreak's clients have experienced homelessness and have faced violence on the streets on in their homes. Their illnesses and addictions lead to crises that leave them seeking help in emergency rooms – or worse, land them in jail.

18.     There are long waiting lists across the region for the critical treatment services these youth need. Daybreak is currently one of the only adolescent behavioral health organizations in Washington State that offers the entire continuum of care services, including: a Wraparound with Intensive Services (WISe) integrated family-centered outpatient therapy program; two psychiatric evaluation and treatment units; two residential inpatient centers for patients with both mental health and substance use disorder; two fully accredited schools; and two outpatient counseling centers. Daybreak's innovative whole-person care approach improves lives and saves money. The program allows teens to commit to their recovery while engaging in school and recreation. Inpatient services include individual therapy, group therapy, and family therapy.

19.     Daybreak's inpatient program is certified by the Washington State Department of Health and the Division of Social and Health Services. Daybreak also earned full three-year accreditation from the Commission on Accreditation of Rehabilitation Facilities (CARF

GARVEY SCHUBERT BARER, P.C.
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

1    International). Daybreak's programs meet the criteria set by the American Society of Addiction

2    Medicine (ASAM) as Level III medically monitored programs.

3    **Daybreak provides alcohol and drug abuse treatment, and is subject to stringent**

4    **federal confidentiality requirements.**

5         20.    Due to the nature of its services, Daybreak acquires extremely sensitive and

6    personal information about its SUD patients. Daybreak estimates the majority of its patients

7    had experienced trauma, including sexual or physical abuse, before seeking treatment. These

8    vulnerable young people do not want to be exposed as needing SUD treatment, so even the

9    mere fact that they have been treated at Daybreak is highly sensitive and could cause them

10   additional trauma if their participation was publicly disclosed. Daybreak maintains all patient

11   records in a secure and confidential manner to protect against unlawful disclosure or use of

12   patient-identifying information related to its current and former SUD patients.

13        21.    Other extremely sensitive and personal information includes information the

14   youth share in confidential treatment settings with mental health practitioners, sometimes

15   during individual therapy sessions. The confidentiality and privacy of information they share in

16   this setting is crucial to their SUD treatment. Minor clients must feel they can trust their

17   counselors and skills coaches not to reveal their very sensitive and personal information, or

18   they won't feel comfortable sharing with them. And Daybreak and its provider-employees

19   cannot effectively treat their patients without a complete understanding of the youth's

20   background, experiences, past trauma and symptoms. The confidentiality and privacy of this

21   information, including the corresponding notes, records, and other documents related to

22   treatment, is therefore critical to creating and maintaining an environment in which these

23   minors are able to obtain adequate treatment for their disease.

24        22.    Daybreak uses "CareLogic" software to track patient information from intake

25   through discharge, recording daily activities, treatment activities, medical chart notes,

26   incidents, and discipline for all its young clients. The CareLogic data is hosted and maintained

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 7

1  by Qualitacts Systems Inc. Both the Spokane and Brush Prairie facilities use CareLogic, and
2  the system includes records for thousands of youth, in eastern Washington and Clark County,
3  including both past and present clients of Daybreak's SUD treatment services.

4      23.    Daybreak is a federally assisted program providing SUD diagnosis and
5  treatment, and thus is subject to the stringent confidentiality requirements set forth in federal
6  confidentiality law promulgated in 42 U.S.C. § 290dd-2 and 42 C.F.R. Part 2. Most of
7  Daybreak's minor patients have their cost of treatment reimbursed through Medicaid, a federal
8  program, and Daybreak also is a charitable organization under IRS Code 501(c)(3), which
9  offers indirect assistance through tax exemptions and deductions.

10      24.    Daybreak is a lawful holder of its patients' SUD records – their private health
11  and treatment information they consent to disclose only to Daybreak. The Part 2 protections
12  strictly prohibit Daybreak from then re-disclosing those confidential records to any other party,
13  unless the disclosure falls under any of Part 2's exceptions.

14      25.    Part 2 is far more protective than HIPAA or any Washington state law
15  protecting other types of health records. Its powerful protections stringently limit disclosure of
16  any record that would reveal the identity of a client – and there are many such records at a
17  treatment program.

18      26.    All of Daybreak's patient-identifying records are protected by Part 2 –
19  absolutely any record in any format that so much as identifies a single client. Such records
20  include CareLogic records, incident reports, insurance claims information, video from security
21  cameras, medication records, client check sheets, employee emails about clients, and
22  handwritten notes.

23  **Part 2's Limitations on Disclosure of Patient Records**

24      27.    Part 2 sets forth stringent requirements governing the protection of patient
25  records. Daybreak, like all other Part 2 SUD treatment programs, may not disclose information
26  regarding, or even identify, patients who are, or ever were, part of Daybreak's program unless

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 8

GARVEY SCHUBERT BARER, P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

1    the patient has provided written consent to the release of this information (*see*, 42 C.F.R. §

2    2.33) or a court of competent jurisdiction authorizes the disclosure of the requested information

3    in accordance with 42 C.F.R. § 2.64. A standard law enforcement subpoena or search warrant is

4    legally insufficient without an accompanying court order issued pursuant to Part 2's specific

5    requirements (*Id.,* § 2.61).

6        28.    Part 2 contains detailed procedures that must be strictly followed by those

7    seeking a court order for disclosure. For example, under 42 C.F.R. §§ 2.65(a) and 2.66(a), an

8    agency seeking such a court order for disclosure must use fictitious names to refer to a patient.

9        29.    When the purpose of the disclosure is criminal investigation or prosecution of a

10   patient, notice and an opportunity to be heard must be given to both the affected patient(s) and

11   provider before an order is granted. *Id.,* § 2.65(b). When the purpose of the disclosure is the

12   criminal investigation or prosecution of a Part 2 program or record holder, advance notice is not

13   required, but the record holder and all SUD patients whose records were seized "must be

14   afforded an opportunity to seek revocation or amendment of that order, limited to the

15   presentation of evidence on the statutory and regulatory criteria for the issuance of the court

16   order. . ." *Id.,* § 2.66(b).

17       30.    There are strict requirements for the adjudication of an application to disclose

18   SUD patient records, and the scope of disclosure that can be ordered. When the purpose of the

19   requested disclosure is the criminal investigation or prosecution of an SUD patient, a court may

20   only authorize disclosure and use of patient records if the court finds the following criteria are

21   met:

22       (1)    The crime involved is extremely serious, such as one which causes or directly

23           threatens loss of life or serious bodily injury including homicide, rape,

24           kidnapping, armed robbery, or assault with a deadly weapon.

25       (2)    There is a reasonable likelihood that the records will disclose information of

26           substantial value in the investigation or prosecution.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 9

GARVEY SCHUBERT BARER, P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

1    (3)    Other ways of obtaining the information are not available or would not be

2             effective.

3    (4)    The potential injury to the patient, to the physician-patient relationship and to

4             the ability of the part 2 program to provide services to other patients is

5             outweighed by the public interest and the need for the disclosure.

6    (5)    If the applicant is a law enforcement agency or official, that: (i) The person

7             holding the records has been afforded the opportunity to be represented by

8             independent counsel; and (ii) Any person holding the records which is an entity

9             within federal, state, or local government has in fact been represented by counsel

10            independent of the applicant.

11  *Id.,* § 2.65(d).

12      31.    When the purpose of the request for disclosure is the criminal investigation or

13  prosecution of the Part 2 program or record holder, a court may only authorize disclosure and

14  use of patient records if the court finds "good cause" exists. To make this determination, the

15  court must find that: "(1) Other ways of obtaining the information are not available or would

16  not be effective; and (2) The public interest and need for the disclosure outweigh the potential

17  injury to the patient, the physician-patient relationship and the treatment services." *Id.,* §§

18  2.66(c); 2.64(d). Importantly, any patient information disclosed under an order for purposes of

19  investigating a Part 2 program may not be used to conduct an investigation or prosecution of a

20  patient in connection with a criminal matter, or be used as the basis for an application for an

21  order for disclosure of records for the purpose of criminal investigation or prosecution of a

22  patient.

23      32.    Further, in every case, regardless of the purpose of the requested disclosure of

24  patient records, the court is required to (1) "limit disclosure and use to those parts of the

25  patient's record which are essential to fulfill the objective of the order," (2) "limit disclosure to

26  those persons whose need for information is the basis for the order," and (3) "include such

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 10

1   other measures as are necessary to limit disclosure for the protection of the patient, the

2   physician-patient relationship and the treatment services." *Id.,* §§ 2.64(e), 2.65(e), 2.66(c).

3       33.     Finally, re-disclosure of information obtained under such an authorizing court

4   order or with written patient consent is severely restricted.

5       34.     Even more stringent restrictions apply to the disclosure of *patient*

6   *communications* with a Part 2 program in the course of diagnosis or treatment. Such

7   communications may be disclosed only if necessary to protect against "an existing threat to life

8   or serious bodily injury," when necessary in connection with "investigation or prosecution of

9   an extremely serious crime allegedly committed by the patient," or in a court or administrative

10  proceeding in which "the patient offers testimony or other evidence pertaining to the content of

11  the confidential communications." *Id.,* § 2.63.

12  **Defendants violated Part 2 in applying for and executing search warrants without**

13  **an authorizing court order.**

14      35.     On August 22, 2018, following legal advice and the dictates of Part 2, a

15  Daybreak employee refused to allow a deputy from the CCSO to watch video surveillance of

16  patients without a court order. The request was made as part of CCSO's investigation of an

17  alleged incident involving three Daybreak patients.

18      36.     The Daybreak employee's compliance with Part 2 was taken as a refusal to

19  cooperate. On September 7, 2018, Defendant Luque applied for and allegedly received at least

20  six search warrants (one appears unsigned) from the Clark County District Court to seize

21  Daybreak patient records from Daybreak's Brush Prairie facility, and another two from the

22  Clark County Superior Court directed toward Daybreak's third-party email and the CareLogic

23  electronic health records for similar records. On information and belief, Defendant Luque

24  signed the affidavits in support of the search warrants, but he acted in collaboration with or at

25  the direction of Defendants Atkins, Cooke, and Beck in obtaining the search warrants.

26

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 11

GARVEY SCHUBERT BARER, P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

1    37.    The purpose of the search warrants appears to have been for the criminal

2    investigation or prosecution of Daybreak patients and/or Daybreak employees.

3    38.    The CCSO investigations concerning Daybreak employees are focused on

4    alleged violations of RCW 26.44.030, Washington State's Mandatory Report law. Violation of

5    this statutes is a gross misdemeanor pursuant to RCW 26.44.080.

6    39.    On September 11, 2018, in a show of force, Defendant Cooke and the CCSO

7    deputies under his supervision served the search warrants at Daybreak's Brush Prairie office

8    and treatment facility, potentially seizing records for *all* of Daybreak's current and former

9    minor SUD patients. This was done without first obtaining a court order authorizing disclosure

10    of SUD patient records after meeting the substantive and stringent requirements of Part 2. As a

11    result of the September 11 search warrant execution on the Brush Prairie facility, Defendants

12    seized and logged 48 evidence items (numbered 4 through 51), including reams of patient

13    records, video footage of patients, four external drives and five computers.

14    40.    Defendant Luque submitted several supplemental affidavits for search warrants

15    following the September 11 seizure of Daybreak documents, purportedly for the purpose of

16    conducting additional searches of the electronic records seized by Defendants for evidence of

17    alleged offenses involving different individuals, including SUD patients. In response, at least

18    two additional search warrants were issued by the Clark County District Court on September 19

19    and September 24, 2018.

20    41.    The affidavits submitted by Defendant Luque, and the resulting search warrants

21    obtained by him in September 2018, disclosed the full, unredacted names of no less than 14

22    minor SUD patients of Daybreak.

23    42.    The seized documents, drives and computers contained protected records of

24    current and former patient identities, diagnosis, prognosis and treatment relating to substance

25    abuse education, prevention, training, treatment or rehabilitation for hundreds or thousands of

26

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 12

GARVEY SCHUBERT BARER, P.C.
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

1   minors, many of whom were treated in Spokane or had no contact with Daybreak's Brush
2   Prairie facility in 2018.

3       43.     Defendants failed to follow the procedural requirements of 42 C.F.R. Part 2 by
4   obtaining a court order authorizing disclosure of patient records. As one example, Defendants
5   disclosed patient names in their affidavits for a search warrant, rather than use fictitious names,
6   as required by statute. Defendants also failed to make the evidentiary showing required for a
7   court order under Part 2. The search warrant affidavits made no claim that the incidents under
8   investigation constituted an extremely serious crime (*Id.,* § 2.65(d)(1)); that disclosure of
9   patient information outweighed the potential injury to the physician-patient relationship and the
10  ability of Daybreak to provide services to other patients (*Id.,* § 2.65(d)(4)); or that disclosure of
11  confidential communications was necessary to protect against an existing threat to life or of
12  serious bodily injury (*Id.,* § 2.63(a)(1)).

13      44.     Defendants' violations of federal law are readily apparent. For example,
14  Defendants did not apply for, nor receive, any court order authorizing disclosure of the
15  substance use disorder records or patient identities. The wholesale seizure of computers swept
16  up confidential communications and treatment records for hundreds or thousands of minor
17  patients—far beyond what might be allowed to be seized under Part 2 as essential to investigate
18  concerns related to the named minor patients (unlawfully) mentioned in Defendants' search
19  warrants. Defendants have not claimed—and cannot claim— that the alleged crimes under
20  investigation were "extremely serious" or that they had no other way of obtaining the requested
21  surveillance video footage except to conduct a wholesale seizure of all patient records and
22  identities. These are only the most blatant examples of Defendants' violations of federal law.

23      **Defendants' unlawful actions continue to harm Daybreak's ability to serve its**
24  **mission, and to violate vulnerable minor patients' privacy rights.**

25      45.     Defendants' actions both before and after their illegal seizure of Daybreak's
26  patient records demonstrate the disregard for the welfare of Daybreak's minor SUD patients,

GARVEY SCHUBERT BARER, P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

1    past and present, and the important SUD treatment they are being provided on a confidential

2    basis by Daybreak's employee-providers. These actions have caused and will continue to cause

3    irreparable harm to Plaintiff's ability to serve its federally-supported mission.

4        46.    First, on information and belief, Defendants have re-disclosed confidential

5    patient records or patient-identifying information to other state agencies, including

6    Washington's child protective services agency and Department of Health. Those agencies have,

7    in turn, contacted former patients, patients' families, and former employees of Daybreak to

8    further their investigation, and led to licensing proceedings with the Department of Health.

9        47.    Second, Defendants, including Beck and Luque, have contacted current and

10   former Daybreak patients, patients' family members, and employee-providers using patient

11   records and/or patient-identifying information. These unwanted and surprising contacts by law

12   enforcement have upset the recipients of such communications and disrupted confidential

13   treatment-provider/patient relationships and the therapeutic goals of Daybreak's program.

14       48.    Third, Defendants, including, on information and belief, Cooke, Luque and

15   Waddell, have taken affirmative steps to publicize its investigation of Daybreak's Brush Prairie

16   facility, leading to a sharp decline in the number of patients being referred to Daybreak for

17   treatment. This has resulted in placing the entire organization at risk of closure due to

18   continuing financial losses. Daybreak has diverted much of its management's attention and

19   remaining funds to defending the organization against the CCSO investigation and the

20   subsequent state licensing proceeding it spurred.

21       **Defendants intend to continue to use the illegally seized evidence to prosecute**

22       **Daybreak patients and employees within weeks.**

23       49.    Now, in direct contravention of 42 C.F.R. §§ 2.13(a) and 2.66(d)(2), Defendants

24   have recently caused an additional re-disclosure of seized records to the Office of Clark County

25   Prosecuting Attorney, which has announced that is reviewing the unlawfully seized information

26   to make charging decisions concerning Daybreak patients and/or employees.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 14

GARVEY SCHUBERT BARER, P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

50.     After Defendants have spent more than half a year reviewing the abundant evidence it seized from Daybreak, Defendant Waddell recently told a reporter for the Columbian that investigators had, last month, sent a "cache" of documents to the Clark County Prosecuting Attorney's Office for its use in pressing criminal charges against Daybreak employees and clients. That re-disclosure violated Part 2 protections, and any use of patient records to prosecute or investigate patients is strictly prohibited by Part 2 without a pre-disclosure hearing. *See id.,* § 2.66(d).

51.     Defendant Luque also mailed letters dated May 14, 2019, to 10 current and former Daybreak employees, asking them for interviews for an unspecified "investigation."

52.     Criminal Division Chief Deputy Prosecutor Scott Jackson told the Columbian that those interview requests were "normal" follow-up when considering charges, adding that a decision on charges "should be made within a few weeks."

53.     This recent reinvigoration of the investigation and looming prosecution—which threatens further unlawful use and re-disclosure of sensitive SUD patient records—harms Daybreak as an organization, again diverting resources from its mission of serving teens in desperate need of treatment. Defendants' recent actions also promise further harm through imminent and illegal exposure of confidential information about vulnerable youth who were only seeking treatment and recovery.

## CLAIM I

## DECLARATORY JUDGMENT

(42 C.F.R. Part 2, 28 U.S.C. §§ 2201, 2202)

54.     Plaintiff hereby incorporates Paragraph 1 through 53 above.

55.     Daybreak is a federally assisted Part 2 program, as defined by 42 C.F.R. § 2.11, that holds itself out as providing, and provides, SUD diagnosis, treatment, or referral for treatment. The patient records of former and current SUD patients maintained by Daybreak and its provider-employees are subject to the confidentiality restrictions of 42 C.F.R. Part 2.

GARVEY SCHUBERT BARER, P.C.
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

1    56.    Defendants seized SUD patient records from Daybreak in violation of 42 C.F.R.

2    Part 2. Specifically, and among other deficiencies, Defendants did not obtain a required court

3    order allowing the disclosure of SUD patient records and patient-identifying information

4    pursuant to 42 C.F.R. §§ 2.61-2.67.

5    57.    On information and belief, Defendants re-disclosed SUD patient records seized

6    from Daybreak in violation of 42 C.F.R. § 2.32 by disclosing confidential patient records to the

7    Clark County Prosecuting Attorney's office, the courts and public in court filings, to the

8    Washington State Department of Health, and to members of the media.

9    58.    On information and belief, Defendants are threatening to further re-disclose

10   SUD patient records and patient-identifying information in the course of its continued effort to

11   investigate Daybreak, its providers-employees, and current and former SUD patients.

12   59.    On information and belief, Defendants used and continues to use SUD patient

13   records and SUD patient-identifying information to conduct a criminal investigation into

14   Daybreak, its employee-providers, and current and former SUD patients.

15   60.    Defendant's continued use and threatened re-disclosure of SUD patient records

16   and patient-identifying information unlawfully seized from Daybreak violates the

17   confidentiality of SUD patient records provisions of 42 C.F.R. Part 2.

18   61.    Daybreak and its current and former SUD patients have already suffered harm as

19   a consequence of Defendants' conduct with respect to SUD patient records and patient-

20   identifying information. Importantly, Defendants' conduct and threatened conduct continues to

21   cause continuing harm to Plaintiff and interfere with the SUD treatment services provided by

22   Daybreak to its patients.

23   62.    Therefore, pursuant to 28 U.S.C. §§ 2201 and 2202, this Court should declare

24   the Defendants' seizure, re-disclosure, and use of SUD patient records and patient-identifying

25   information as unlawful and preliminarily and permanently enjoin Defendants from the re-

26   disclosure and continued use of SUD patient records seized from Daybreak.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 16

GARVEY SCHUBERT BARER, P.C.
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

1

## CLAIM II

2

## INJUNCTION

3

(Washington Superior Court Criminal Rule 2.3(e))

4

63. Plaintiff hereby incorporates Paragraph 1 through 53 above.

5

64. Daybreak is a federally-assisted Part 2 program, as defined by 42 C.F.R. § 2.11,

6 that holds itself out as providing, and provides, SUD diagnosis, treatment, or referral for

7 treatment. The patient records of former and current SUD patients maintained by Daybreak and

8 its provider-employees are subject to the confidentiality restrictions of 42 C.F.R. Part 2.

9

65. On September 11, 2018, Defendants seized the property of Daybreak, including

10 48 pieces of evidence logged on a property submission form with the CCSO.

11

66. The seized property intentionally encompassed SUD patient records and patient-

12 identifying information protected by 42 C.F.R. Part 2. Defendants' seizure of this material was

13 unlawful. Specifically, and among other deficiencies, Defendants did not obtain a required

14 court order allowing the disclosure of SUD patient records and patient-identifying information

15 pursuant to 42 C.F.R. §§ 2.61-2.67.

16

67. Washington law provides a remedy for the pre-charging return of unlawfully

17 seized property. Specifically, Washington Superior Court Criminal Rule 2.3(e) provides, in

18 relevant part:

19

Motion for Return of Property. A person aggrieved by an unlawful search and

20

seizure may move the court for the return of the property on the ground that the

21

property was illegally seized and that the person is lawfully entitled to possession

22

thereof. If the motion is granted the property shall be returned. If a motion for

23

return of property is made or comes on for hearing after an indictment or

24

information is filed in the court in which the motion is pending, it shall be treated

25

as a motion to suppress.

26

68. Therefore, pursuant to Washington Superior Court Criminal Rule 2.3(e), this

GARVEY SCHUBERT BARER, P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

1   Court should exercise its supplemental jurisdiction to order Defendants to return the unlawfully

2   seized property of Daybreak, including all property seized by Defendants and sheriff's deputies

3   under their supervision on September 11, 2018.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request that this Court:

1.      Issue a declaratory judgment that Defendants' seizure, retention, re-disclosure

and continued use of SUD patient records and patient-identifying information seized from

Daybreak on September 11, 2018, violated and continues to violate 42 C.F.R. Part 2.

2.      Issue preliminary and permanent injunctive relief, without bond, restraining

Defendants from continued use and disclosure of the seized SUD patient records and patient-

identifying information.

3.      Order Defendants to return all property seized from Daybreak on September 11,

2018, pursuant to defective legal process, namely, the absence of a court order allowing

disclosure of SUD patient records and patient-identifying information.

4.      Grant Plaintiffs attorneys' fees, costs, and expenses pursuant to the bad faith

exception of the American Rule.

5.      Grant such further relief as this Court deems just and proper.

DATED this 7th day of June, 2019.

GARVEY SCHUBERT BARER, P.C.

By  s/ David H. Smith
     David H. Smith, WSBA #10721

By  s/ Diana S. Breaux
     Diana S. Breaux, WSBA #46112

dsmith@gsblaw.com
dbreaux@gsblaw.com

*Attorneys for Plaintiff Daybreak Youth Services*

GARVEY SCHUBERT BARER, P.C.
eighteenth floor
1191 second avenue
seattle, washington   98101-2939
206 464 3939

1

## CERTIFICATE OF SERVICE

2

3       I, Patricia Shillington, certify under penalty of perjury under the laws of the State of

4       Washington that, on June 7, 2019, I caused to be served on the person(s) listed below the

5       foregoing Complaint for Declaratory and Injunctive Relief.

6

7       Emily Sheldrick                                    ☒    United States Mail, First Class
        Leslie Lopez                                       ☐    By Legal Messenger
8       Clark County Prosecuting Attorney's Office         ☐    By Facsimile
        Civil Division                                     ☐    By Federal Express
9       P.O. Box 5000                                      ☒    By Email
        Vancouver, WA 98666
10      Emily.sheldrick@clark.wa.gov
        Leslie.lopez@clark.wa.gov

11

12          DATED this 7th day of June, 2019.

13

14                                                 Patricia Shillington
                                                   Patricia Shillington

15

16

17

18

19

20

21

22

23

24

25

26

GARVEY SCHUBERT BARER, P.C.
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939