1

2

3

4

5

6

7            UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF WASHINGTON
8

DAYBREAK YOUTH SERVICES,
9   individually and on behalf of its former and       NO.
    current patients;
10                                                      **DECLARATION OF DAVID H.**
                        Plaintiff,                      **SMITH IN SUPPORT OF**
11                                                      **PLAINTIFF'S MOTION FOR**
                                                        **TEMPORARY RESTRAINING**
12          v.                                          **ORDER**

CHUCK ATKINS, in his official capacity as
13  Clark County Sheriff, MIKE COOKE, in his
    official capacity as Clark County
14  Undersheriff, and CHRISTOPHER LUQUE,
    in his official capacity as Clark County
15  Sheriff's Office Sergeant, ADAM BECK, in
    his official capacity as Clark County Sheriff's
16  Office Detective, and BRENT WADDELL, in
    his official capacity as Clark County Sheriff's
17  Office Sergeant,

18                      Defendants.

19          I, DAVID SMITH, hereby declare as follows:

20          1.     I am one of the attorneys representing Plaintiff in this matter. I am over 18 years

21  of age, competent to testify and make this statement upon personal knowledge.

22          2.     Defendant Luque submitted two search warrant affidavits to the Clark County

23  Superior Court on or about September 7, 2018, for the purpose of obtaining electronically

24  stored information from Microsoft Corporation and Qualifacts Facts Systems, Inc. pertaining to

25  Daybreak employees and certain identified Daybreak patients. True and correct copies of the

26  search warrant issued by the Clark County Superior Court on September 7, 2018 are attached as

DECLARATION OF DAVID H. SMITH IN SUPPORT OF PLAINTIFFS'         GARVEY SCHUBERT BARER, P.C.
MOTION FOR TEMPORARY RESTRAINING ORDER - 1                              *eighteenth floor*
                                                                    *1191 second avenue*
                                                               *seattle, washington 98101-2939*
                                                                       *206 464 3939*

1  **Exhibit A and B**, respectively. These exhibits have been redacted to remove personal
2  identifiers and other confidential patient information. The underlying affidavits by Defendant
3  Luque are so replete with confidential information concerning Daybreak patients and personal
4  identifiers that Plaintiff cannot attach them.

5      3.    Attached as **Exhibit C** are true and correct copies of six search warrants
6  Defendant Luque ogtained from the Clark County District Court on September 7, 2018. These
7  exhibits have geen redacted to remove personal identifiers and other confidential patient
8  information. The underlying affidavits by Defendant Luque are so replete with confidential
9  information concerning Daybreak patients and personal identifiers that Plaintiff cannot attach
10  them.

11      4.    Daybreak Youth Services ("Daybreak") is a 501(c)(3) entity under the Internal
12  Revenue Code. Attached as **Exhibit D** is a true and correct copy of the Internal Revenue
13  Service's December 14, 2004 letter confirming Daybreak's tax exempt status under Section
14  501(c)(3) and as a charity under Sections 509(a)(1) and 170(b)(1)(A)(vi).

15      5.    Attached as **Exhibit E** is a true and correct copy of my February 13, 2019 letter
16  to the Hon. Brian T. Moran, the United States Attorney for the Western District of Washington,
17  referring Defendants; violations of 42 C.F.R. Part 2 to his office. I have omitted the
18  attachments to this letter due to their size and to avoid possible disclosure of personal
19  identifiers and other confidential patient information.

20      6.    Attached as **Exhibit F** is a true and correct copy of my February 14, 2019 letter
21  to Clark County Deputy Prosecuting Attorney Leslie A. Lopez. I have omitted the letter's
22  attachments due to their size and to avoid possible disclosure of personal identifiers and other
23  confidential patient information.

24      7.    Attached as **Exhibit G** is a true and correct copy of Defendant Chuck Atkin's
25  June 7, 2018 complaint letter to the Washington State Department of Health concerning
26  Daybreak.

DECLARATION OF DAVID H. SMITH IN SUPPORT OF PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER - 2
ERYN KARPINSKI HOERSTER

GARVEY SCHUBERT BARER, P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

1       8.     Attached as **Exhibits H and I**, respectively, are Justin M. Thorp's May 22, 2019

2 letters to Defendant Chris Luque and DPA Leslie Lopez. Mr. Thorp's firm serves as Daybreak's

3 General Counsel in place of Landerholm, P.S.

4       9.     Attached as **Exhibit J** is a true and correct copy of the May 24, 2019 article

5 published by The Columbian.

6      10.    Attached as **Exhibit K and L**, respectively, are true and correct copies of the

7 two supplemental search warrants Defendant Luque obtained from the Clark County District

8 Court on September 18, 2018.

9      11.    I attach as **Exhibit M**, excerpts from one of the search warrant affidavits

10 Defendant Luque submitted to the Clark County District Court on or about September 7, 2018.

11 This exhibit has been redacted to remove personal identifiers and other confidential patient

12 information.

13      I declare under penalty of perjury under the laws of the state of Washington that the

14 foregoing is true and correct.

15      DATED and signed this 6th day of June, 2019 in Seattle, Washington.

16

17

18                            DAVID H. SMITH

19

20

21

22

23

24

25

26

DECLARATION OF DAVID H. SMITH IN SUPPORT OF PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER - 3

GARVEY SCHUBERT BARER, P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

GSB:10328956.1 [41094.00500]

1

**CERTIFICATE OF SERVICE**

2

I, Patricia Shillington, certify under penalty of perjury under the laws of the State of

3

Washington that, on June 7, 2019, I caused to be served on the person(s) listed below the

4

foregoing Declaration of David H. Smith in Support of Plaintiff Daybreak Youth Services'

5

Motion for Temporary Restraining Order .

6

7

8  Emily Sheldrick ☒  United States Mail, First Class
   Leslie Lopez ☐  By Legal Messenger
9  Clark County Prosecuting Attorney's Office ☐  By Facsimile
   Civil Division ☐  By Federal Express
10 P.O. Box 5000 ☒  By Email
   Vancouver, WA 98666
11 Emily.sheldrick@clark.wa.gov
   Leslie.lopez@clark.wa.gov
12

13

DATED this 7th day of June, 2019.

14

15

16 Patricia Shillington

17

18

19

20

21

22

23

24

25

26

DECLARATION OF DAVID H. SMITH IN SUPPORT OF PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER - 4

GARVEY SCHUBERT BARER, P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

# Exhibit A

**SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF CLARK**

STATE OF WASHINGTON,                )
                      Plaintiff      )
                              )
                              )
V.                              )
                              )      **SEARCH WARRANT**

Daybreak Youth Services

Michael S. Trotter ██████████
Cecilia E. Hubert ████████
Angela R. Ball ████
Annette Arlene Klinefelter ██████████

                Defendants

1
2       The people of the State of Washington, to any Sheriff, Police Officer, or Peace Officer in Clark County:
3 Proof by written affidavit, under oath, made in conformity with the State of Washington Criminal Rules for
4 Superior Courts, rule 2.3, having been made to me this day by the Clark County Sheriff's Office Tactical
5 Detective Unit, that there is probable cause for the issuance of a search warrant on the grounds set forth in the
6 State of Washington Criminal Rules for Superior Courts, rule 2.3, Section (c).
7
8       This Search Warrant is issued pursuant to Revised Code of Washington § 10.96.020. A response
9 is due within twenty business days of receipt, unless a shorter time is stated herein, or the applicant
10 consents to a recipient's request for additional time to comply;
11
12       Evidence of the crime of RCW 9A.44.050, Rape in the Second Degree, RCW 9A.44.100.2A, Indecent
13 Liberties, RCW 9A.42.030, Criminal mistreatment in the second degree, RCW 9A.44.100, Sexual misconduct
14 with a minor in the second degree, RCW 26.44.030, Duty and authority to notify to wit:
15
16
17

***SEARCH WARRANT EXECUTION: DATE:*** 05-10-18 ***HOUR:***_____ ***BY:*** L ᵧ₄ₗₓ 45 ᵤᵧ

                                                                    1

## SUPERIOR COURT OF THE STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

1  LOCATION(S) TO BE SEARCHED LOCATION(S) TO BE SEARCHED:

2  **1.** Microsoft Corporation, Online Services Custodian of Records at:

3

| | |
|---|---|
| Contact Name: | Microsoft Corporation, Custodian of Records |
| Online Service: | Microsoft Corporation |
| Online Service Address: | One Microsoft Way |
| | Redmond, WA 98052-6399 |
| Fax Number | (425) 708-0096 |
| Email: | USLEReq@Microsoft.com |
| Note(s): | Will accept via electronic request. |
| Last Updated: | September, 2018 |

4  FOR THE FOLLOWING ELECTRONIC RECORDS:

5      To the extent that the information described below is within the possession, custody, or control of

6  MICROSOFT CORPORATION, including any messages, records, files, logs, or information that have been

7  deleted but are still available to MICROSOFT CORPORATION or have been preserved pursuant to a request

8  made under 18 U.S.C. §2703(f), MICROSOFT CORPORATION is required to disclose the following

9  information to the government records and other information in its possession pertaining to the subscriber

10 or customer associated with the accounts or account identifier, including the contents of communications

11 for any and all accounts or associated email user ID's with the accounts listed below between December 1,

12 2017, and January 8, 2018; between February 1, 2018 and February 28, 2018; between April 10, 2018 and

13 May 2, 2018; between April 30, 2018 and May 11, 2018; between August 3, 2018 and August 24, 2018:

14

15 aklinefelter@daybreakyouthservices.org

16 mtrotter@daybreakyouthservices.org

17 aball@daybreakyouthservices.org

18 chubert@daybreakyouthservices.org

19

20     1. All contact information, including full names, user identification numbers, birth dates, contact e-

21         mail addresses, and other user identifiers;

22

23     2. Content of all email messages for between December 1, 2017, and January 8, 2018; between

24         February 1, 2018 and February 28, 2018; between April 10, 2018 and May 2, 2018; between April

25         30, 2018 and May 11, 2018; between August 3, 2018 and August 24, 2018, to include all picture and

*SEARCH WARRANT EXECUTION: DATE:* ०५–१०-१⊗*HOUR:* _____ *BY:* ⌐ᴗᴥᵤ ५⠆⠆ᴗ५

2

**SUPERIOR COURT OF THE STATE OF WASHINGTON**
**IN AND FOR THE COUNTY OF CLARK**

1      video attachments, such as the contents of private messages in the user's inbox, sent or received,

2      whether these items are retained in their original location, or have been moved by the user to trash

3      folders;

4

5    3.  All Internet Protocol (IP) logs, including all records of the IP addresses that logged into the account

6        between December 1, 2017, and January 8, 2018; between February 1, 2018 and February 28,

7        2018; between April 10, 2018 and May 2, 2018; between April 30, 2018 and May 11, 2018; between

8        August 3, 2018 and August 24, 2018;

9

10   4.  The length of service (including start date / user account creation), the types of service utilized

11       by the user;

12

13   5.  Location history (network and GPS) all registered devices between December 1, 2017, and

14       January 8, 2018; between February 1, 2018 and February 28, 2018; between April 10, 2018 and

15       May 2, 2018; between April 30, 2018 and May 11, 2018; between August 3, 2018 and August 24,

16       2018;

17

18   6.  Login history between December 1, 2017, and January 8, 2018; between February 1, 2018 and

19       February 28, 2018; between April 10, 2018 and May 2, 2018; between April 30, 2018 and May 11,

20       2018; between August 3, 2018 and August 24, 2018, to include IP addresses and ports, dates and

21       times, and any unique device identifiers included, indicating for each whether via mobile device or

22       desktop;

23

24  Any notice that MICROSOFT CORPORATION is required to make to the owner or possessor of the property

25  searched should be postponed until authorized by law enforcement, for the following reasons: The warrant

26  issued in this cause does not authorize the seizure of any tangible property. In this case, such an order is

27  appropriate because the requested search warrant relates to an ongoing criminal investigation that is

28  neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to

29  the ongoing investigation. Accordingly, there is reason to believe that notification of the existence of the

30  requested search warrant could jeopardize the investigation, including by giving targets an opportunity to

31  destroy or tamper with evidence, change patterns of behavior, or notify co-conspirators, some of which may

32  be unknown at this time.

33

*SEARCH WARRANT EXECUTION:  DATE:* 07-11-18 *HOUR:*_____ *BY:* _Ligh 450n_

3

## SUPERIOR COURT OF THE STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

1    The above named item(s) are on this date, September 6, 2018, in the possession of an online service
2    provider business known as "MICROSOFT CORPORATION."
3    Microsoft, Inc.
4       Attn: Microsoft Corporation., Legal Investigations Support
5       One Microsoft Way
6       Redmond, CA  98052-6399
7
8       Note:  Law enforcement is requesting Microsoft documentation only and will not be physically
9    searching the named location.
10
11    I make this affidavit in support of an application for a search warrant for information associated with
12   certain Microsoft accounts that are stored in premises owned, maintained, controlled, or operated by
13   Microsoft, an online company headquartered in Redmond, Washington.  The information to be searched is
14   described above and in the following paragraphs.  This affidavit is made in support of an application for a
15   search warrant to require Microsoft to disclose to the Clark County Sheriff's Office records and other
16   information in its possession, pertaining to the subscriber or customer operating the above described
17   account.
18
19    Further, in compliance with Revised Code of Washington § 10.96.020, it is hereby ordered that the
20   recipient of this Search Warrant shall complete a Certification of Custodian of Records form identifying the
21   provider of the records and explaining the preparation, production, and authenticity of any records provided
22   in response to this search warrant.
23
24   AND TO SEIZE THEM IF FOUND and bring them forthwith before the Court according to law.
25
26    This Search Warrant was issued this _7th_ day of _September_ 20_18_, at _12:10_ am/pm
27
28
29   By the Honorable _____
30           Judge of the Superior Court
31           County of Clark
32           State of Washington

**SEARCH WARRANT EXECUTION: DATE:** ०\\-\\-१८ **HOUR:** _____ **BY:** Lyn, Lyson

4

# Exhibit B

**SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF CLARK**

STATE OF WASHINGTON,                                )
                Plaintiff                            )
                                                            )
                                                            )
V.                                                 )
                                                            )    **SEARCH WARRANT**
                                                            )
                                                            )
█████████████████████                              )
█████████████████                                  )
█████████████████████                              )
█████████████████████                              )
█████████████████████                              )

Daybreak Youth Services
████████████████████████

Michael S. Trotter ███████████
Cecilia E. Hubert ███████████
Angela R. Ball ████████
Annette Arlene Klinefelter ███████████

              Defendants

1
2       The people of the State of Washington, to any Sheriff, Police Officer, or Peace Officer in Clark County:
3   Proof by written affidavit, under oath, made in conformity with the State of Washington Criminal Rules for
4   Superior Courts, rule 2.3, having been made to me this day by the Clark County Sheriff's Office Tactical
5   Detective Unit, that there is probable cause for the issuance of a search warrant on the grounds set forth in the
6   State of Washington Criminal Rules for Superior Courts, rule 2.3, Section (c).
7
8       This Search Warrant is issued pursuant to Revised Code of Washington § 10.96.020.  A response
9   is due within twenty business days of receipt, unless a shorter time is stated herein, or the applicant
10  consents to a recipient's request for additional time to comply;
11
12      Evidence of the crime of RCW 9A.44.050, Rape in the Second Degree, RCW 9A.44.100.2A, Indecent
13  Liberties, RCW 9A.42.030, Criminal mistreatment in the second degree, RCW 9A.44.100, Sexual misconduct
14  with a minor in the second degree, RCW 26.44.030, Duty and authority to notify to wit:
15
16
17
18
    ***SEARCH WARRANT EXECUTION: DATE:*** o⁶-11-18 ***HOUR:*** 0700 ***BY:*** ℒ.ℳ.ℳ. 450M

                                                                   1

## SUPERIOR COURT OF THE STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

1    LOCATION(S) TO BE SEARCHED LOCATION(S) TO BE SEARCHED:

2      1. Qualifacts Systems Inc., Custodian of Records at:

3

| | |
|---|---|
| Contact Name: | Qualifacts Systems Inc, Custodian of Records |
| Online Service: | CareLogic |
| Online Service Address: | 315 Deaderick Street, Ste. 2300 |
| | Nashville, TN  37238 |
| Fax Number | (615) 386-1225 |
| Email: | Jeremy.landa@qualifacts.com |
| Note(s): | Will accept via electronic request. |
| Last Updated: | September, 2018 |

4

5    FOR THE FOLLOWING ELECTRONIC RECORDS:

6      To the extent that the information described below is within the possession, custody, or control of

7    QUALIFACTS SYSTEMS INC., including any messages, records, files, logs, or information that have been

8    deleted but are still available to QUALIFACTS SYSTEMS INC. or have been preserved pursuant to a request

9    made under 18 U.S.C. §2703(f), QUALIFACTS SYSTEMS INC. is required to disclose the following

10    information to the government records and other information in its possession pertaining to the subscriber

11    or customer associated with the accounts or account identifier, including the contents of specific client files

12    for any and all accounts or associated names with the accounts listed below between December 1, 2017,

13    and August 24, 2018:

14

15    Qualifacts Systems Client:

16    Daybreak Youth Services

17    11910 NE 154th Street

18    Brush Prairie, WA 98606

19

20    Involved Clients of Daybreak within CareLogic:

21    ██████████ (DOB ███████

22    ████████████ (DOB ██████ )

23    ███████████ (DOB ██████ )

24    ████████ (Unknown DOB)

25    ██████████ (DOB ██████ )

26    █████████ (DOB ██████ )

27    █████████████ (DOB ██████ )

28    ██████████ (DOB ██████ )

29    ████████ (DOB ██████ )

30    ██████████ (DOB ██████ )

*SEARCH WARRANT EXECUTION:  DATE:* 09-11-18  *HOUR:* 0700  *BY:* L-vps 4504

2

## SUPERIOR COURT OF THE STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

1. All contact information, including full names, birth dates, contact e-mail addresses, physical addresses (including city, state, and zip code), telephone numbers, and other personal identifiers of the aforementioned clients;

2. Any and all client records, shift notes, and incident reports as stored or entered into "CareLogic" pertaining to, naming, or anyway involving the aforementioned clients of Daybreak Youth Services These documents to include the complete un-redacted case file with any and all notes, treatments, medical records, meetings, and staff contact involving the aforementioned parties;

3. Content of all email messages, notes, or other internal messages involving the aforementioned clients beginning December 1, 2017, and extending to August 24, 2018, to include all picture and video attachments, such as the contents of private messages in the user's inbox, sent or received, whether these items are retained in their original location, or have been moved by the user to trash folders;

4. All Internet Protocol (IP) logs, including all records of the IP addresses that logged into the account between: December 1, 2017, and August 24, 2018;

5. Records showing the intake, and discharge dates of the involved parties;

6. Login history from December 1, 2017, and August 24, 2018, to include IP addresses and ports, dates and times, and any unique device identifiers included, indicating for each whether via mobile device or desktop as it pertains to the viewing, altering, or otherwise accessing the aforementioned client files;

Which are stored at premises owned, maintained, controlled, or operated by Qualifacts Systems Inc.

Any notice that QUALIFACTS SYSTEMS INC. is required to make to the owner or possessor of the property searched should be postponed until authorized by law enforcement, for the following reasons: The warrant issued in this cause does not authorize the seizure of any tangible property. In this case, such an order is appropriate because the requested search warrant relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the ongoing investigation. Accordingly, there is reason to believe that notification of the existence of the

***SEARCH WARRANT EXECUTION: DATE:*** 04-11-18 ***HOUR:*** 0700 ***BY:*** Lt. 4501

3

## SUPERIOR COURT OF THE STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

1   requested search warrant could jeopardize the investigation, including by giving targets an opportunity to

2   destroy or tamper with evidence, change patterns of behavior, or notify co-conspirators, some of which may

3   be unknown at this time.

4

5         The above named item(s) are on this date, September 6, 2018, in the possession of a cloud based

6   software service provider business known as "QUALIFACTS SYSTEMS INC."

7

8         Attn:  Qualifacts Systems Inc, Custodian of Records

9         315 Deaderick Street, Ste. 2300

10        Nashville, TN  37238

11

12        Note:  Law enforcement is requesting Qualifacts Systems Inc. documentation only and will not be

13   physically searching the named location.

14

15        I make this affidavit in support of an application for a search warrant for information associated with

16   certain Qualifacts Systems Inc. accounts that are stored in premises owned, maintained, controlled, or

17   operated by Qualifacts Inc., an online solution provider headquartered in Nashville Tennessee.  The

18   information to be searched is described above and in the following paragraphs.  This affidavit is made in

19   support of an application for a search warrant to require Qualifacts Systems Inc. to disclose to the Clark

20   County Sheriff's Office records and other information in its possession, pertaining to the subscriber or

21   customer operating the above described account.

22

23        Further, in compliance with Revised Code of Washington § 10.96.020, it is hereby ordered that the

24   recipient of this Search Warrant shall complete a Certification of Custodian of Records form identifying the

25   provider of the records and explaining the preparation, production, and authenticity of any records provided

26   in response to this search warrant.

27

28   AND TO SEIZE THEM IF FOUND and bring them forthwith before the Court according to law.

29

30        This Search Warrant was issued this  7th day of _September_, 20 _18_, at _12:10_ am/pm

31

32

33   By the Honorable _____

34                    Judge of the Superior Court

35                    County of Clark

36                    State of Washington

***SEARCH WARRANT EXECUTION: DATE:*** 04-11-18 ***HOUR:*** 0700 ***BY:*** _____ 4584

4

# Exhibit C

## STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

| | |
|---|---|
| STATE OF WASHINGTON,<br>              Plaintiff | )<br>)<br>) |
| V. | )<br>) **SEARCH WARRANT** |
| ███████████ | )<br>) |
| **&** | ) |
| **Michael S. Trotter** ███████████ | ) |
| **&** | ) |
| **Cecilia E. Hubert** ███████████ | ) |
| **&** | |
| **Angela R. Ball** ███████████ | |
| **&** | |
| **Annette Arlene Klinefelter** ███████████ | |

Defendant

1
2        The people of the State of Washington, to any Sheriff, Police Officer, or Peace Officer in Clark County:
3    Proof by written affidavit, under oath, made in conformity with the State of Washington Criminal Rules for
4    Courts of Limited Jurisdiction, rule 2.3, having been made to me this day by Clark County Sheriff's Office
5    Sergeant Christopher Luque, that there is probable cause for the issuance of a search warrant on the grounds
6    set forth in the State of Washington Criminal Rules for Courts of Limited Jurisdiction, rule 2.3, Section (c).
7
8        You are therefore commanded, with the necessary and proper assistance, to make a diligent search,
9    good cause having been shown therefore, of the following described property, within <u>10 days</u> of the issuance of
10   this warrant:
11
12       Evidence of the crime of RCW 9A.44.100.2A, Indecent Liberties and RCW 26.44.030, Duty and
13   Authority to Notify to wit;
14
15
16
17
18
19
20

***SEARCH WARRANT EXECUTION: DATE:*** 04-11-18 ***HOUR:*** 0703   ***BY:*** Luque 45'04

1

# STATE OF WASHINGTON
# IN AND FOR THE COUNTY OF CLARK

1   LOCATION/ PERSON TO BE SEARCHED:

2



3
4   1.   11910 NE 154th Street, Vancouver, Clark County, State of Washington:  Further described as a
5        one story, commercial establishment identified as "Daybreak Youth Services", light blue in color, with
6        the main entrance door constructed of glass and facing west.  The building is constructed with a
7        metal roof, stone accents on the facade, and is marked with the number "11910" in black numbers
8        on the southwest corner.  The search is to include are parts therein of the offices and private rooms
9        used by employees of the facility;

10

11   FOR THE FOLLOWING PROPERTY/EVIDENCE:

12   1.   Electronic equipment, such as computers, computer software, central processing unit (CPU),
13        internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives
14        and diskettes, tape drives and tapes, zip drives, optical storage devices, video cameras, digital
15        cameras, cell phones, and any other digital memory storage devices), and the contents therein, as
16        well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware
17        (such as physical keys and locks), which may be used to store the following items of evidence;

18

19   2.   Records showing the intake, and discharge dates of the involved parties, specifically ████████
20        ████ and ████████████████████

21

22   3.   Records, documents, scheduling information, payroll ledgers; whether electronic or physical
23        showing the on duty staff or other witnesses, who were present during the occurrence or reporting
24        thereof the involved incident on or about the month of December 2017;

25

26   4.   Documentation confirming the complete name, date of birth, address and phone number for
27        ████████████████████████

28

*SEARCH WARRANT EXECUTION:* DATE: 0⁷-11-18  HOUR: ⌐500  BY: ⌐⋍⋎ᵧᵣₐ 4564

2

## STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

1  5.  Internal memos, emails, investigations, and any other documents whether in electronic or
2       physical form, pertaining to the sexual crime committed against ▨▨▨▨▨▨▨▨▨ on
3       or about the month of December 2017.  Specifically, but not limited to emails or other forms of
4       communication pertaining to this incident or the knowledge thereof by any staff members or officers
5       of Daybreak Youth Services;
6
7  6.  Any and all client records, shift notes, and incident reports as stored or entered into "CareLogic"
8       or other reporting system used pertaining to, naming, or anyway involving ▨▨▨▨▨▨▨
9       ▨▨▨ or the combination thereof.  These documents to include the complete un-redacted case file
10      with any and all notes, treatments, medical records, meetings, and staff contact involving the
11      aforementioned parties;
12
13 7.  Disciplinary records for the suspect, ▨▨▨▨▨▨▨ during her residency at Daybreak Youth
14      Services;
15
16 8.  Criminal History as provided to Daybreak Youth Services by any outside agency or other private
17      party pertaining to ▨▨▨▨▨▨ during her admittance to or residency of Daybreak Youth Services;
18
19 9.  Documentation, to include policies, procedures, common practice, and/or training pertaining to
20      the mandatory reporting of incidents to include assaults, sexual assaults, and harassment for youth
21      and other residents of the Daybreak Youth Services facility;
22
23 10. Computer-related documentation that explains or illustrates how to configure or use the
24      computer hardware, software, or other related items/devices.  The documentation consists of
25      written, recorded, printed, or electronically stored material;
26
27 11. Computer-related passwords and other data security devices designed to restrict access to or
28      hide computer software, documentation, or data.  Data security may consist of hardware, software or
29      other programming code;
30
31 12. Digital data and surveillance video that may be kept on any computer related storage device as
32      listed in '1' above.  The specific data will be (or will contain or incorporate) digital video and/or
33      image files depicting evidence of the sexual assault incident involving ▨▨▨▨▨▨▨
34      ▨▨▨ any digital data related to the RCW 9A.44.100.2A, Indecent Liberties, and any digital "user
35      attribution" evidence to include, but not limited to, registry information, configuration files, user

*SEARCH WARRANT EXECUTION: DATE:* 04-11-18 *HOUR:* 0900 *BY:* Logan 4504

3

**STATE OF WASHINGTON**
**IN AND FOR THE COUNTY OF CLARK**

1   profiles, user logins (and the data associated with the foregoing, such as file creation and last

2   accessed dates) that may be evidence of who used, viewed or controlled the computer or storage

3   medium at a relevant time;

4

5   13. Locked containers, including, but not limited to safes, briefcases, file cabinets and other types of

6   locked boxes; which may be used for containing any of the listed items detailed herein;

7

8   14. Photographs, of the scene, including still photos, negatives, digital images, digital video, video tapes,

9   slides, films, undeveloped film, and the contents therein, in particular, photographs of evidence

10   collected, victims, witnesses, suspects, and co-conspirators;

11

12   AND TO SEIZE THEM IF FOUND and bring them forthwith before the Court according to law.

13

14   This Search Warrant was issued this ___ day of September 20 19 at 10:25 am/pm.

15

16   By the Honorable _____

17                    Judge of the District Court

18                    County of Clark

19                    State of Washington

*SEARCH WARRANT EXECUTION: DATE:09-11-18  HOUR:900  BY: Laux 450m*

4

## STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| Plaintiff | ) | |
| | ) | |
| V. | ) | **SEARCH WARRANT** |
| | ) | |
| John Doe # 1 | ) | |
| & | ) | |
| John Doe # 2 | ) | |
| & | ) | |
| Michael S. Trotter ▮▮▮▮▮ | ) | |
| & | ) | |
| Cecilia E. Hubert ▮▮▮▮▮ | ) | |
| & | | |
| Angela R. Ball ▮▮▮▮▮ | | |
| & | | |
| Annette Arlene Klinefelter ▮▮▮▮▮ | | |

_____ Defendant _____

1
2  The people of the State of Washington, to any Sheriff, Police Officer, or Peace Officer in Clark County:
3 Proof by written affidavit, under oath, made in conformity with the State of Washington Criminal Rules for
4 Courts of Limited Jurisdiction, rule 2.3, having been made to me this day by Clark County Sheriff's Office
5 Sergeant Christopher Luque, that there is probable cause for the issuance of a search warrant on the grounds
6 set forth in the State of Washington Criminal Rules for Courts of Limited Jurisdiction, rule 2.3, Section (c).
7
8  You are therefore commanded, with the necessary and proper assistance, to make a diligent search,
9 good cause having been shown therefore, of the following described property, within 10 days of the issuance of
10 this warrant:
11
12  Evidence of the crime of RCW 9A.44.050, Rape in the Second Degree and RCW 26.44.030, Duty and
13 Authority to Notify to wit;
14
15
16
17
18
19

**SEARCH WARRANT EXECUTION: DATE:** 0⁶-11-18 **HOUR:** 0900 **BY:** ▮▮▮▮▮ 4508▮

1

## STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

1  LOCATION/ PERSON TO BE SEARCHED:

2



3

4  1.  **11910 NE 154th Street, Vancouver, Clark County, State of Washington:** Further described as a

5  one story, commercial establishment identified as "Daybreak Youth Services", light blue in color, with

6  the main entrance door constructed of glass and facing west. The building is constructed with a

7  metal roof, stone accents on the facade, and is marked with the number "11910" in black numbers

8  on the southwest corner. The search is to include are parts therein of the offices and private rooms

9  used by employees of the facility;

10

11  FOR THE FOLLOWING PROPERTY/EVIDENCE:

12  1.  Electronic equipment, such as computers, computer software, central processing unit (CPU),

13  internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives

14  and diskettes, tape drives and tapes, zip drives, optical storage devices, video cameras, digital

15  cameras, cell phones, and any other digital memory storage devices), and the contents therein, as

16  well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware

17  (such as physical keys and locks), which may be used to store the following items of evidence;

18

19  2.  Records showing the intake, and discharge dates of the involved parties, specifically ██████████

20  ████████████████████████ and the unidentified suspect(s). It is the intent of the Affiant to obtain

21  these records after positively identifying the suspect(s) through the service of this warrant;

22

23  3.  Documentation confirming the complete name, date of birth, address and phone number for

24  ████████████ and the unidentified suspect(s) once positively identified;

25

26  4.  Records, documents, scheduling information, payroll ledgers; whether electronic or physical

27  showing the on duty staff or other witnesses, who were present during the occurrence or reporting

28  thereof the involved incident on or about May 5, 2018;

29

*SEARCH WARRANT EXECUTION: DATE:* 05-11-18 *HOUR:* 0100 *BY:* Lynn 45un

## STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

1    5.  Disciplinary records for any staff of Daybreak Youth Services as a result of the failure to act, report

2        or otherwise prevent this incident. Specifically including, but not limited to the employee files,

3        employee records, or other stored documents of any employee who received corrective action,

4        termination or other corrective counseling, which would contribute evidence in the crime of RCW

5        26.44.030, Duty and Authority to Notify;

6

7    6.  Internal memos, emails, investigations, and any other documents whether in electronic or

8        physical form, pertaining to the sexual crime committed against ▮▮▮▮▮▮ by two unidentified

9        suspects on or about the date of May 5, 2018. Specifically, but not limited to any emails or other

10      items of documentation confirming the knowledge of this incident by any staff members or officers

11      of Daybreak Youth Services;

12

13   7.  Any and all client records, shift notes, and incident reports as stored or entered into "CareLogic"

14      or other reporting system used pertaining to, naming, or anyway involving ▮▮▮▮▮ John

15      Doe #1, John Doe #2, or the combination thereof. These documents to include the complete un-

16      redacted case file with any and all notes, medical records treatments, meetings, and staff contact

17      involving the aforementioned parties. It is the intent of the Affiant to obtain these records after

18      positively identifying the suspect(s) through the service of this warrant;

19

20   8.  Records showing the identity of co-conspirators in the crime of RCW 9A.44.050, Rape in the

21      Second Degree, including but not limited to, emails, handwritten notes, journals, electronic recording

22      media, and the like in relation this investigation;

23

24   9.  Disciplinary records for the suspects, John Doe #1, and John Doe #2 during his residency at

25      Daybreak Youth Services. It is the intent of the Affiant to obtain these records after positively

26      identifying the suspect(s) through the service of this warrant;

27

28   10. Documentation, to include policies, procedures, common practice, and/or training pertaining to

29      the mandatory reporting of incidents to include assaults, sexual assaults, and harassment for youth

30      and other residents of the Daybreak Youth Services facility;

31

32   11. Computer-related documentation that explains or illustrates how to configure or use the

33      computer hardware, software, or other related items/devices. The documentation consists of

34      written, recorded, printed, or electronically stored material,

*SEARCH WARRANT EXECUTION: DATE:* 05-11-18 *HOUR:* 0700 *BY:* ▮▮▮▮ 4504

3

**STATE OF WASHINGTON**
**IN AND FOR THE COUNTY OF CLARK**

1

2    12. **Computer-related passwords and other data security devices** designed to restrict access to or

3    hide computer software, documentation, or data.  Data security may consist of hardware, software or

4    other programming code;

5

6    13. **Digital data and surveillance video** that may be kept on any **computer related storage device as**

7    listed in '1' above.  The specific data will be (or will contain or incorporate) digital video and/or

8    image files depicting evidence of the sexual assault incident involving ████████ on or about

9    the date of May 5, 2018, any digital data related to the RCW 9A.44.050, Rape in the Second Degree,

10   and any digital "user attribution" evidence to include, but not limited to, registry information,

11   configuration files, user profiles, user logins (and the data associated with the foregoing, such as file

12   creation and last accessed dates) that may be evidence of who used, viewed or controlled the

13   computer or storage medium at a relevant time;

14

15   14. **Locked containers,** including, but not limited to safes, briefcases, file cabinets and other types of

16   locked boxes; which may be used for containing any of the listed items detailed herein;

17

18   15. **Photographs,** of the scene, including still photos, negatives, digital images, digital video, video tapes,

19   slides, films, undeveloped film, and the contents therein. in particular, photographs of evidence

20   collected, victims, witnesses, suspects, and co-conspirators;

21

22

23   AND TO SEIZE THEM IF FOUND and bring them forthwith before the Court according to law.

24

25   This Search Warrant was issued this _____day of _____, 20____, at _____am/pm.

26

27   By the Honorable _____

28                          Judge of the District Court

29                          County of Clark

30                          State of Washington

***SEARCH WARRANT EXECUTION: DATE:*** _05-11-18_ ***HOUR:*** _0903_ ***BY:*** _Lynn 4504_

4

**STATE OF WASHINGTON**
**IN AND FOR THE COUNTY OF CLARK**

STATE OF WASHINGTON,                    )
        Plaintiff                           )
                                        )
V.                                      )      **SEARCH WARRANT**
                                        )
                                        )
▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆                          )
                                        )
&amp;                                       )
Michael S. Trotter ▆▆▆▆▆▆▆               )
&amp;                                       )
Cecilia E. Hubert ▆▆▆▆▆▆▆                )
&amp;
Angela R. Ball ▆▆▆▆▆▆
&amp;
Annette Arlene Klinefelter ▆▆▆▆▆▆

              Defendant

1

2       The people of the State of Washington, to any Sheriff, Police Officer, or Peace Officer in Clark County:

3    Proof by written affidavit, under oath, made in conformity with the State of Washington Criminal Rules for

4    Courts of Limited Jurisdiction, rule 2.3, having been made to me this day by Clark County Sheriff's Office

5    Sergeant Christopher Luque, that there is probable cause for the issuance of a search warrant on the grounds

6    set forth in the State of Washington Criminal Rules for Courts of Limited Jurisdiction, rule 2.3, Section (c).

7

8       You are therefore commanded, with the necessary and proper assistance, to make a diligent search,

9    good cause having been shown therefore, of the following described property, within 10 days of the issuance of

10   this warrant:

11

12      Evidence of the crime of RCW 9A.44.100, Sexual misconduct with a minor in the second degree, and

13   RCW 26.44.030, Duty and authority to notify to wit;

14

15

16

17

18

19

20

21

***SEARCH WARRANT EXECUTION: DATE:*** ᴏ⸜ˑ-\\⸓ᛉ ***HOUR:*** Oˤ⸜ᴊᴏ ***BY:*** ▆▆▆▆▆ ᵁˢᴏ⸜

1

## STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

1  LOCATION/ PERSON TO BE SEARCHED:

2



3
4  1.  11910 NE 154th Street, Vancouver, Clark County, State of Washington:  Further described as a
5      one story, commercial establishment identified as "Daybreak Youth Services", light blue in color, with
6      the main entrance door constructed of glass and facing west.  The building is constructed with a
7      metal roof, stone accents on the facade, and is marked with the number "11910" in black numbers
8      on the southwest corner.  The search is to include are parts therein of the offices and private rooms
9      used by employees of the facility;

10

11  FOR THE FOLLOWING PROPERTY/EVIDENCE:

12  1.  Electronic equipment, such as computers, computer software, central processing unit (CPU),
13      internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives
14      and diskettes, tape drives and tapes, zip drives, optical storage devices, video cameras, digital
15      cameras, cell phones, and any other digital memory storage devices), and the contents therein, as
16      well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware
17      (such as physical keys and locks), which may be used to store the following items of evidence;

18

19  2.  Records showing the intake, and discharge dates of the involved parties, specifically ▮▮▮▮▮
20      ▮▮▮▮

21

22  3.  Documentation confirming the complete name, date of birth, address and phone number for
23      ▮▮▮▮▮▮

24

25  4.  Records, documents, scheduling information, payroll ledgers; whether electronic or physical
26      showing the on duty staff or other witnesses, who were present during the occurrence or reporting
27      thereof the involved incident on or about the date of January 1, 2018;

28

*SEARCH WARRANT EXECUTION: DATE:* ⟨handwritten⟩ *HOUR:* ⟨handwritten⟩ *BY:* ⟨handwritten⟩

2

## STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

1    5.  Any and all employee files, documents, investigations, or otherwise stored data for or naming

2                        . Including but not limited to; the complete and un-redacted case

3          file with any and all notes, discipline, termination documents, or other counseling received by

4          during employment;

5

6    6.  Disciplinary records and investigations for any staff of Daybreak Youth Services as a result of the

7          failure to act, report or otherwise prevent this incident.  Specifically including, but not limited to the

8          employee files, employee records, or other stored documents of any employee who received

9          corrective action, termination or other corrective counseling, which would contribute evidence in the

10        crime of RCW 26.44.030, Duty and Authority to Notify;

11

12    7.  Internal memos, emails, and any other documents whether in electronic or physical form,

13        pertaining to the sexual crime committed against          by Daybreak Youth Services

14        employee          Specifically, but not limited to any emails or other items of documentation

15        confirming the knowledge of this incident by any staff members or officers of Daybreak Youth

16        Services;

17

18    8.  Any and all client records, shift notes, and incident reports as stored or entered into "CareLogic"

19        or other reporting system used and pertaining to, naming, or anyway involving

20        These documents to include the complete un-redacted case file with any and all notes, medical

21        records, treatments, meetings, and staff contact involving the aforementioned party;

22

23    9.  Documentation, to include policies, procedures, common practice, and/or training pertaining to

24        the mandatory reporting of incidents to include assaults, sexual assaults, and harassment for youth

25        and other residents of the Daybreak Youth Services facility;

26

27    10. Computer-related documentation that explains or illustrates how to configure or use the

28        computer hardware, software, or other related items/devices.  The documentation consists of

29        written, recorded, printed, or electronically stored material;

30

31    11. Computer-related passwords and other data security devices designed to restrict access to or

32        hide computer software, documentation, or data.  Data security may consist of hardware, software or

33        other programming code;

34

*SEARCH WARRANT EXECUTION: DATE:* 08-11-18 *HOUR:* 0500 *BY:* Lynn Yeon

## STATE OF WASHINGTON
## IN·AND FOR THE COUNTY OF CLARK

1    12. **Digital data and surveillance video** that may be kept on any computer related storage device as

2    listed in '1' above. The specific data will be (or will contain or incorporate) digital video and/or

3    image files depicting evidence of the sexual assault incident involving ▊▊▊ and Daybreak

4    Youth Services Employee ▊▊▊ on or about the date of January 1, 2018, any digital data

5    related to the RCW 9A.44.100, Sexual misconduct with a minor in the second degree, and any digital

6    "user attribution" evidence to include, but not limited to, registry information, configuration files, user

7    profiles, user logins (and the data associated with the foregoing, such as file creation and last

8    accessed dates) that may be evidence of who used, viewed or controlled the computer or storage

9    medium at a relevant time;

10

11    13. **Locked containers,** including, but not limited to safes, briefcases, file cabinets and other types of

12    locked boxes; which may be used for containing any of the listed items detailed herein;

13

14    14. **Photographs,** of the scene, including still photos, negatives, digital images, digital video, video tapes,

15    slides, films, undeveloped film, and the contents therein, in particular, photographs of evidence

16    collected, victims, witnesses, suspects, and co-conspirators;

17

18    AND TO SEIZE THEM IF FOUND and bring them forthwith before the Court according to law.

19

20    This Search Warrant was issued this ___7___ day of _September_ 20 _18_, at _10:21_ (am/pm.)

21

22    By the Honorable _____

23                 Judge of the District Court

24                  County of Clark

25                  State of Washington

***SEARCH WARRANT EXECUTION: DATE:*** _9-11-18_ ***HOUR:*** _____ ***BY:*** _Lynn 450N_

4

## STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

STATE OF WASHINGTON,　　　　　　　)
　　　　　　　　Plaintiff　　　　　　)
　　　　　　　　　　　　　　　　　　)
V.　　　　　　　　　　　　　　　　　)　　**SEARCH WARRANT**
　　　　　　　　　　　　　　　　　　)
█████████████████　　　　　　　　)
&　　　　　　　　　　　　　　　　　)
████████████████████　　　　　　)
&　　　　　　　　　　　　　　　　　)
███████████████████　　　　　　　)
&　　　　　　　　　　　　　　　　　)
Michael S. Trotter  ████████
&
Cecilia E. Hubert  ████████
&
Angela R. Ball  ████████
&
Annette Arlene Klinefelter  ████████

　　　　　　　　Defendant
_____

1
2　　　　The people of the State of Washington, to any Sheriff, Police Officer, or Peace Officer in Clark County:
3　Proof by written affidavit, under oath, made in conformity with the State of Washington Criminal Rules for
4　Courts of Limited Jurisdiction, rule 2.3, having been made to me this day by Clark County Sheriff's Office
5　Sergeant Christopher Luque, that there is probable cause for the issuance of a search warrant on the grounds
6　set forth in the State of Washington Criminal Rules for Courts of Limited Jurisdiction, rule 2.3, Section (c).
7
8　　　　You are therefore commanded, with the necessary and proper assistance, to make a diligent search,
9　good cause having been shown therefore, of the following described property, within 10 days of the issuance of
10　this warrant:
11
12　　　　Evidence of the crime of RCW 9A.44.100.2A, Indecent Liberties and RCW 26.44.030, Duty and
13　authority to notify to wit;
14
15
16
17
18
19
20
21

***SEARCH WARRANT EXECUTION:  DATE:*** ͼ-11-1̵8 ***HOUR:*** ᴏ̌ᴏᴏ ***BY:*** ████ 415.ᴏ̌ᴍ

1

**STATE OF WASHINGTON**
**IN AND FOR THE COUNTY OF CLARK**

1   LOCATION/ PERSON TO BE SEARCHED:

2



3

4   1.  **11910 NE 154th Street, Vancouver, Clark County, State of Washington:**  Further described as a

5       one story, commercial establishment identified as "Daybreak Youth Services", light blue in color, with

6       the main entrance door constructed of glass and facing west.  The building is constructed with a

7       metal roof, stone accents on the facade, and is marked with the number "11910" in black numbers

8       on the southwest corner.  The search is to include are parts therein of the offices and private rooms

9       used by employees of the facility;

10

11  FOR THE FOLLOWING PROPERTY/EVIDENCE:

12  1.  Electronic equipment, such as computers, computer software, central processing unit (CPU),

13      internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives

14      and diskettes, tape drives and tapes, zip drives, optical storage devices, video cameras, digital

15      cameras, cell phones, and any other digital memory storage devices), and the contents therein, as

16      well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware

17      (such as physical keys and locks), which may be used to store the following items of evidence;

18

19  2.  Records showing the intake, and discharge dates of the involved parties, specifically ████████

20      ████████████████████████████████████████████

21

22  3.  Records, documents, scheduling information, payroll ledgers; whether electronic or physical

23      showing the on duty staff or other witnesses, who were present during the occurrence or reporting

24      thereof the involved incident on or about the month of August 2018;

25

26  4.  Documentation confirming the complete name, date of birth, address and phone number for

27      ████████████████████████████████████████████

28

29  5.  Internal memos, emails, investigations, and any other documents whether in electronic or

30      physical form, pertaining to the sexual crime committed against ████████ by ████████ on

*SEARCH WARRANT EXECUTION: DATE:* ░░░░░ *HOUR:* ░░░░ *BY:* ░░░░░░░░

2

## STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

1    or about the date of August 12, 2018.  Specifically, but not limited to emails or other forms of

2    communication pertaining to this incident or the knowledge thereof;

3

4  6.  Any and all client records, shift notes, and incident reports as stored or entered into "CareLogic"

5    or other reporting system used pertaining to, naming, or anyway involving ███████████

6    ███████████████████████████████ or the combination thereof.  These

7    documents to include the complete un-redacted case file with any and all notes, treatments, medical

8    records, meetings, and staff contact involving the aforementioned parties;

9

10  7.  Disciplinary records for the suspect ███████████ during her residency at Daybreak Youth

11    Services;

12

13  8.  Criminal History as provided to Daybreak Youth Services by any outside agency or other private

14    party pertaining to ███████████ during her admittance to or residency of Daybreak Youth Services;

15

16  9.  Documentation, to include policies, procedures, common practice, and/or training pertaining to

17    the mandatory reporting of incidents to include assaults, sexual assaults, and harassment for youth

18    and other residents of the Daybreak Youth Services facility;

19

20  10. Any and all employee files, documents, investigations, or otherwise stored data for or naming

21    ███████████ and ███████████ Including but not limited to; the complete and un-redacted

22    case file with any and all notes, discipline, termination documents, or other counseling received by

23    ███████████ and ███████████ during employment;

24

25  11. Disciplinary records and investigations for any staff of Daybreak Youth Services as a result of the

26    failure to act, report or otherwise prevent this incident and any related incidents involving ███████

27    ███████ and/or ███████████ Specifically including, but not limited to the employee files, employee

28    records, or other stored documents of any employee who received corrective action, termination or

29    other corrective counseling, which would contribute evidence in the crime of RCW 26.44.030, Duty

30    and Authority to Notify;

31

32  12. Computer-related documentation that explains or illustrates how to configure or use the

33    computer hardware, software, or other related items/devices.  The documentation consists of

34    written, recorded, printed, or electronically stored material;

35

*SEARCH WARRANT EXECUTION: DATE:* ॳ\-11-1४  *HOUR:* ०१७  *BY:* ┴ⁿᵢₓᵤ 4५ᵤ९

3

### STATE OF WASHINGTON
### IN AND FOR THE COUNTY OF CLARK

1     13. **Computer-related passwords and other data security devices** designed to restrict access to or

2     hide computer software, documentation, or data.  Data security may consist of hardware, software or

3     other programming code;

4

5     14. **Digital data and surveillance video** that may be kept on any computer related storage device as

6     listed in '1' above.  The specific data will be (or will contain or incorporate) digital video and/or

7     image files depicting evidence of the sexual incident involving ▮▮▮▮▮ and ▮▮▮▮▮ on

8     our about the date of August 12, 2018, any digital data related to the RCW 9A.44.100.2A, Indecent

9     Liberties, and any digital "user attribution" evidence to include, but not limited to, registry information,

10     configuration files, user profiles, user logins (and the data associated with the foregoing, such as file

11     creation and last accessed dates) that may be evidence of who used, viewed or controlled the

12     computer or storage medium at a relevant time;

13

14     15. **Locked containers,** including, but not limited to safes, briefcases, file cabinets and other types of

15     locked boxes; which may be used for containing any of the listed items detailed herein;

16

17     16. **Photographs,** of the scene, including still photos, negatives, digital images, digital video, video tapes,

18     slides, films, undeveloped film, and the contents therein, in particular, photographs of evidence

19     collected, victims, witnesses, suspects, and co-conspirators;

20

21

22 AND TO SEIZE THEM IF FOUND and bring them forthwith before the Court according to law.

23

24     This Search Warrant was issued this ___7th___ day of _September_ 20_18_ at _10:51_ am/pm.

25

26     By the Honorable _Darpilauopolort_

27                       Judge of the District Court

28                       County of Clark

29                       State of Washington

***SEARCH WARRANT EXECUTION: DATE:*** _09-11-18_ ***HOUR:*** _0400_ ***BY:*** _Leap 4524_

**STATE OF WASHINGTON**
**IN AND FOR THE COUNTY OF CLARK**

STATE OF WASHINGTON,                    )
                Plaintiff          )
                             )
                             )
V.                           )
                             )
                             )
█████████████████          )
&            )
Michael S. Trotter ███████████          )
&            )
Cecilia E. Hubert ████████          )
&
Angela R. Ball █████████
&
Annette Arlene Klinefelter ███████████

            Defendant

**SEARCH WARRANT**

1
2        The people of the State of Washington, to any Sheriff, Police Officer, or Peace Officer in Clark County:
3   Proof by written affidavit, under oath, made in conformity with the State of Washington Criminal Rules for
4   Courts of Limited Jurisdiction, rule 2.3, having been made to me this day by Clark County Sheriff's Office
5   Sergeant Christopher Luque, that there is probable cause for the issuance of a search warrant on the grounds
6   set forth in the State of Washington Criminal Rules for Courts of Limited Jurisdiction, rule 2.3, Section (c).
7
8        You are therefore commanded, with the necessary and proper assistance, to make a diligent search,
9   good cause having been shown therefore, of the following described property, within <u>10 days</u> of the issuance of
10  this warrant:
11
12       Evidence of the crime of RCW 9A.42.030, Criminal mistreatment in the second degree, and RCW
13  26.44.030, Duty and authority to notify to wit;
14
15
16
17
18
19
20
21

***SEARCH WARRANT EXECUTION: DATE:*** 05-11-18 ***HOUR:*** 0700 ***BY:*** _____ 45-64

1

## STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

1   <u>LOCATION/ PERSON TO BE SEARCHED:</u>

2



3

4   1.  **11910 NE 154th Street, Vancouver, Clark County, State of Washington:**  Further described as a

5       one story, commercial establishment identified as "Daybreak Youth Services", light blue in color, with

6       the main entrance door constructed of glass and facing west.  The building is constructed with a

7       metal roof, stone accents on the facade, and is marked with the number "11910" in black numbers

8       on the southwest corner.  The search is to include are parts therein of the offices and private rooms

9       used by employees of the facility;

10

11  <u>FOR THE FOLLOWING PROPERTY/EVIDENCE:</u>

12  1.  **Electronic equipment, such as computers, computer software,** central processing unit (CPU),

13      internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives

14      and diskettes, tape drives and tapes, zip drives, optical storage devices, video cameras, digital

15      cameras, cell phones, and any other digital memory storage devices), and the contents therein, as

16      well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware

17      (such as physical keys and locks), which may be used to store the following items of evidence;

18

19  2.  **Records** showing the intake, and discharge dates of the involved parties, specifically ████████

20      ████████████████████

21

22  3.  **Records, documents, scheduling information, payroll ledgers;** whether electronic or physical

23      showing the on duty staff or other witnesses, who were present during the occurrence or reporting

24      thereof the involved incident on or about the month of February 2018 or time of the incident as

25      determined within this investigation;

26

27  4.  **Documentation** confirming the complete name, date of birth, address and phone number for the

28      involved ████████

29

*SEARCH WARRANT EXECUTION: DATE:* 05-11-18 *HOUR:* 0900 *BY:* Lapu 4521

2

**STATE OF WASHINGTON**
**IN AND FOR THE COUNTY OF CLARK**

1   5.  Internal memos, emails, investigations, and any other documents whether in electronic or
2       physical form, pertaining to the attempted suicide of the male identified as ███████ on or
3       about the month of February 2018.  Specifically, but not limited to emails or other forms of
4       communication pertaining to this incident or the knowledge thereof;
5
6   6.  Any and all client records, shift notes, and incident reports as stored or entered into "CareLogic"
7       or other reporting system used pertaining to, naming, or anyway involving ███████
8       These documents to include the complete un-redacted case file with any and all notes, treatments,
9       medical records, meetings, and staff contact involving the aforementioned party;
10
11  7.  Any and all employee files, documents, investigations, or otherwise stored data for or naming
12      ███████████████ Including but not limited to; the complete and un-redacted case
13      file with any and all notes, discipline, termination documents, or other counseling received by ███
14      ████ during employment;
15
16  8.  Documentation, to include policies, procedures, common practice, and/or training pertaining to
17      the reporting of incidents to include injuries, self-harm attempts, assumed or claimed injuries of
18      youth and other residents of the Daybreak Youth Services facility;
19
20  9.  Computer-related documentation that explains or illustrates how to configure or use the
21      computer hardware, software, or other related items/devices.  The documentation consists of
22      written, recorded, printed, or electronically stored material;
23
24  10. Computer-related passwords and other data security devices designed to restrict access to or
25      hide computer software, documentation, or data.  Data security may consist of hardware, software or
26      other programming code;
27
28  11. Digital data and surveillance video that may be kept on any computer related storage device as
29      listed in '1' above.  The specific data will be (or will contain or incorporate) digital video and/or
30      image files depicting evidence of the self-harm incident involving ███████ any digital data
31      related to the RCW 9A.42.030, Criminal mistreatment in the second degree, and any digital "user
32      attribution" evidence to include, but not limited to, registry information, configuration files, user
33      profiles, user logins (and the data associated with the foregoing, such as file creation and last
34      accessed dates) that may be evidence of who used, viewed or controlled the computer or storage
35      medium at a relevant time;

*SEARCH WARRANT EXECUTION: DATE:* 0̶5̶-11-1̶8̶ *HOUR:* 0̶1̶0̶0̶ *BY:* ᒪ—ᵤ⳾ᵘ 4ᔕ̄⳾ᵘ

3

## STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

1

2  12. **Locked containers**, including, but not limited to safes, briefcases, file cabinets and other types of

3      locked boxes; which may be used for containing any of the listed items detailed herein;

4

5  13. **Photographs**, of the scene, including still photos, negatives, digital images, digital video, video tapes,

6      slides, films, undeveloped film, and the contents therein, in particular, photographs of evidence

7      collected, victims, witnesses, suspects, and co-conspirators;

8

9  AND TO SEIZE THEM IF FOUND and bring them forthwith before the Court according to law.

10

11      This Search Warrant was issued this ____ day of _September_ at _10:24_ am/pm.

12

13      By the Honorable _Douglas Quince Quoke_

14                      Judge of the District Court

15                      County of Clark

16                      State of Washington

---

**SEARCH WARRANT EXECUTION: DATE:** 09-11-18 **HOUR:** 0900 **BY:** Ryan 4584

4

## STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

STATE OF WASHINGTON,                           )
                Plaintiff                     )
                         )
V.                                             )
                         )
                         )
█████████████████████              )
&                                              )
Michael S. Trotter  DOB 06/17/1976             )
&                                              )
Cecilia E Hubert   DOB 09/04/1966              )
&                                              )
█████████████████████
&
Angela R. Ball   DOB 06/04/1976
&
Annette Arlene Klinefelter  DOB 02/17/1975

# SEARCH WARRANT

_____
                    Defendant

1
2        The people of the State of Washington, to any Sheriff, Police Officer, or Peace Officer in Clark County:
3    Proof by written affidavit, under oath, made in conformity with the State of Washington Criminal Rules for
4    Courts of Limited Jurisdiction, rule 2.3, having been made to me this day by Clark County Sheriff's Office
5    Sergeant Christopher Luque, that there is probable cause for the issuance of a search warrant on the grounds
6    set forth in the State of Washington Criminal Rules for Courts of Limited Jurisdiction, rule 2.3, Section (c).
7
8        You are therefore commanded, with the necessary and proper assistance, to make a diligent search,
9    good cause having been shown therefore, of the following described property, within 10 days of the issuance of
10   this warrant:
11
12       Evidence of the crime of RCW 9A.44.100.2A, Indecent Liberties and RCW 26.44.030, Duty and
13   Authority to Notify to wit;
14
15
16
17
18

***SEARCH WARRANT EXECUTION: DATE:*** O'7-11-1₹ ***HOUR:*** O'₁₀₀ ***BY:*** ↳ᴄ₄ᴜ ᴜ₅⁻ɔ₄

1

**STATE OF WASHINGTON**
**IN AND FOR THE COUNTY OF CLARK**

1

2  LOCATION/ PERSON TO BE SEARCHED:

3



4
5  1.  11910 NE 154th Street, Vancouver, Clark County, State of Washington:  Further described as a
6      one story, commercial establishment identified as "Daybreak Youth Services", light blue in color, with
7      the main entrance door constructed of glass and facing west.  The building is constructed with a
8      metal roof, stone accents on the facade, and is marked with the number "11910" in black numbers
9      on the southwest corner.  The search is to include are parts therein of the offices and private rooms
10     used by employees of the facility;

11

12  FOR THE FOLLOWING PROPERTY/EVIDENCE:

13

14  1.  Electronic equipment, such as computers, computer software, central processing unit (CPU),
15      internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives
16      and diskettes, tape drives and tapes, zip drives, optical storage devices, video cameras, digital
17      cameras, cell phones, and any other digital memory storage devices), and the contents therein, as
18      well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware
19      (such as physical keys and locks), which may be used to store the following items of evidence;

20

21  2.  Records showing the intake, and discharge dates of the involved parties, specifically ███████
22      ███████████████████████ ;

23

24  3.  Records, documents, scheduling information, payroll ledgers; whether electronic or physical
25      showing the on duty staff or other witnesses, who were present during the occurrence or reporting
26      thereof the involved incident on or about April 10, 2018;

27

28  4.  Documentation confirming the complete name, date of birth, address and phone number for
29      ████████████████████████████

*SEARCH WARRANT EXECUTION:  DATE:* ᴄ₁-₁₁-₁ᴄ *HOUR:* ₂₁₀₂ *BY:* ２ ᵏᵢᵧᵤ ᴴᶠᵎᴺ

2

## STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

5. Internal memos, emails, investigations, and any other documents whether in electronic or physical form, pertaining to the sexual crime committed against ███████ by ███████ on or about the date of April 10, 2018. Specifically, but not limited to emails sent and received by Annette Klinefelter and Michael Trotter on or about the months of April and May pertaining to ████████████████████. Additionally including any emails or other items of documentation confirming the knowledge of this incident by any staff members or officers of Daybreak Youth Services;

6. Any and all client records, shift notes, and incident reports as stored or entered into "CareLogic" or other reporting system used pertaining to, naming, or anyway involving ███████ ████████████ or the combination thereof; this specifically includes an incident report authored by Cicilia Hubert on 04/11/2018. These documents to include the complete un-redacted case file with any and all notes, treatments, medical records, meetings, and staff contact involving the aforementioned parties;

7. Disciplinary records for the suspect, ███████ during his residency at Daybreak Youth Services;

8. Criminal History as provided to Daybreak Youth Services by any outside agency or other private party pertaining to ███████ during his admittance to or residency of Daybreak Youth Services;

9. Documentation, to include policies, procedures, common practice, and/or training pertaining to the mandatory reporting of incidents to include assaults, sexual assaults, and harassment for youth and other residents of the Daybreak Youth Services facility;

10. Computer-related documentation that explains or illustrates how to configure or use the computer hardware, software, or other related items/devices. The documentation consists of written, recorded, printed, or electronically stored material;

11. Computer-related passwords and other data security devices designed to restrict access to or hide computer software, documentation, or data. Data security may consist of hardware, software or other programming code;

**SEARCH WARRANT EXECUTION: DATE:** ⊙∿-\\-\⊱  **HOUR:** ⊙∿⊙⊙  **BY:** ∠∿∿∿∿ ⊔\⊼∿∿

3

## STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

1      12. Digital data and surveillance video that may be kept on any computer related storage device as

2          listed in '1' above. The specific data will be (or will contain or incorporate) digital video and/or

3          image files depicting evidence of the sexual assault incident involving ▇▇▇▇▇▇ and ▇▇▇▇

4          ▇▇▇ any digital data related to the RCW 9A.44.100.2A, Indecent Liberties, and any digital "user

5          attribution" evidence to include, but not limited to, registry information, configuration files, user

6          profiles, user logins (and the data associated with the foregoing, such as file creation and last

7          accessed dates) that may be evidence of who used, viewed or controlled the computer or storage

8          medium at a relevant time;

9

10      13. Locked containers, including, but not limited to safes, briefcases, file cabinets and other types of

11          locked boxes; which may be used for containing any of the listed items detailed herein;

12

13      14. Photographs, of the scene, including still photos, negatives, digital images, digital video, video tapes,

14          slides, films, undeveloped film, and the contents therein, in particular, photographs of evidence

15          collected, victims, witnesses, suspects, and co-conspirators;

16

17  AND TO SEIZE THEM IF FOUND and bring them forthwith before the Court according to law.

18

19      This Search Warrant was issued this __7__ day of _September_ 20 _18_, at _10:27_ am/pm.

20

21      By the Honorable _Darvel Laurapede_

22                  Judge of the District Court

23                  County of Clark

24                  State of Washington

*SEARCH WARRANT EXECUTION: DATE: 09-11-18  HOUR: 0900  BY: Lieut. 4501*

4

# Exhibit D

Internal Revenue Service

Date: December 14, 2004

DAYBREAK YOUTH SERVICES
11711 SPRAGUE AVE STE D4
SPOKANE VALLEY        WA 99206-6122

Department of the Treasury
P. O. Box 2508
Cincinnati, OH 45201

Person to Contact:
   Richard E. Owens 31-07974
   Customer Service Representative
Toll Free Telephone Number:
   8:00 a.m. to 6:30 p.m. EST
   877-829-5500
Fax Number:
   513-263-3756
Federal Identification Number:
   91-1083936

RECEIVED
DEC 2 0 2004

Dear Sir or Madam:

This is in response to the amendment to your organization's Articles of Incorporation filed with
the state on June 21, 2004. We have updated our records to reflect the name change as
indicated above.

In November 1979 we issued a determination letter that recognized your organization as
exempt from federal income tax. Our records indicate that your organization is currently
exempt under section 501(c)(3) of the Internal Revenue Code.

Our records indicate that your organization is also classified as a public charity under
sections 509(a)(1) and 170(b)(1)(A)(vi) of the Internal Revenue Code.

Our records indicate that contributions to your organization are deductible under section 170
of the Code, and that you are qualified to receive tax deductible bequests, devises, transfers
or gifts under section 2055, 2106 or 2522 of the Internal Revenue Code.

If you have any questions, please call us at the telephone number shown in the heading of
this letter.

Sincerely,

*Janna K. Skufca*

Janna K. Skufca, Director, TE/GE
Customer Account Services

Internal Revenue Service
District Director

Department of the Treasury

Date:  27 MAR 1981

Our Letter Dated:
March 19, 1980
Person to Contact:
John Sutton
Contact Telephone Number:
(206) 442-5106

Daybreak of Spokane
P.O. Box 8616
Spokane, WA  99203

Dear Applicant:

This modifies our letter of the above date in which wo stated that you would be treated as an organization which is not a private foundation. until the expiration of your advance ruling period.

Based on the information you submitted, we have determined that you are not a private foundation within the meaning of section 509(a) of the Internal Revenue Code, because you are an organization of the type described in section *See below____. Your exempt status under section 501(c)(3) of the code is still in effect.

Grantors and contributors may rely on this determination until the Internal Revenue Service publishes notice to the contrary. However, a grantor or a contributor may not rely on this determination if he or she was in part responsible for, or was aware of, the act or failure to act that resulted in your loss of section __509(a)(1)_____ status, or acquired knowledge that the Internal Revenue Service had given notice that you would be removed from classification as a section 509(a)(1)_____ organization.

Because this letter could help resolve any questions about your private foundation status, please keep it in your permanent records.

If you have any questions, please contact the person whose name and telephone number are shown above.

Sincerely yours,

Arturo A Jacair

District Director

*509(a)(1) and 170(b)(1)(A)(vi)

915 Second Avenue, Seattle, Wash. 98174

Letter 1050 (DO) (7-77)

**Internal Revenue Service**
District Director

Department of the Treasury

EP/EO-II (JD)

**Employer Identification Number:**
  91-1083936

**Accounting Period Ending:**
  December 31

**Foundation Status Classification:**
  509(a)(1) and 170(b)(1)(A)(vi)

**Advance Ruling Period Ends:**
  December 31, 1980

**Person to Contact:**
  John Sutton

**Contact Telephone Number:**
  (206) 442-5106
  SEA:EO:80-383

Date:   MAR 1 9 1980

Daybreak of Spokane
W. 212 Hawthorne Road
Spokane, WA  99218

Dear Applicant:

   Based on information supplied, and assuming your operations will be as stated
in your application for recognition of exemption, we have determined you are exempt
from Federal income tax under section 501(c)(3) of the Internal Revenue Code.

   Because you are a newly created organization, we are not now making a final
determination of your foundation status under section 509(a) of the Code. However,
we have determined that you can reasonably be expected to be a publicly supported
organization described in section    509(a)(1) and 170(b)(1)(A)(vi).

   Accordingly, you will be treated as a publicly supported organization, and not
as a private foundation, during an advance ruling period. This advance ruling period
begins on the date of your inception and ends on the date shown above.

   Within 90 days after the end of your advance ruling period, you must submit to
us information needed to determine whether you have met the requirements of the
applicable support test during the advance ruling period. If you establish that you
have been a publicly supported organization, you will be classified as a section
509(a)(1) or 509(a)(2) organization as long as you continue to meet the requirements
of the applicable support test. If you do not meet the public support requirements
during the advance ruling period, you will be classified as a private foundation for
future periods. Also, if you are classified as a private foundation, you will be
treated as a private foundation from the date of your inception for purposes of
sections 507(d) and 4940.

   Grantors and donors may rely on the determination that you are not a private
foundation until 90 days after the end of your advance ruling period. If you submit
the required information within the 90 days, grantors and donors may continue to
rely on the advance determination until the Service makes a final determination of
your foundation status. However, if notice that you will no longer be treated as a
section    509(a)(1)   organization is published in the Internal Revenue Bulletin,
grantors and donors may not rely on this determination after the date of such
publication. Also, a grantor or donor may not rely on this determination if he or
she was in part responsible for, or was aware of, the act or failure to act that
resulted in your loss of section    509(a)(1)   status, or acquired knowledge that
the Internal Revenue Service had given notice that you would be removed from
classification as a section   509(a)(1)     organization.

P.O. Box 21224, Seattle, Washington 98111        (over)                Letter 1045(DO) (6—77)

If your sources of support, or your purposes, character, or method of operation change, please let us know so we can consider the effect of the change on your exempt status and foundation status. Also, you should inform us of all changes in your name or address.

Generally, you are not liable for social security (FICA) taxes unless you file a waiver of exemption certificate as provided in the Federal Insurance Contributions Act. If you have paid FICA taxes without filing the waiver, you should call us. You are not liable for the tax imposed under the Federal Unemployment Tax Act (FUTA).

Organizations that are not private foundations are not subject to the excise taxes under Chapter 42 of the Code. However, you are not automatically exempt from other Federal excise taxes. If you have any questions about excise, employment, or other Federal taxes, please let us know.

Donors may deduct contributions to you as provided in section 170 of the Code. Bequests, legacies, devises, transfers, or gifts to you or for your use are deductible for Federal estate and gift tax purposes if they meet the applicable provisions of sections 2055, 2106, and 2522 of the Code.

You are required to file Form 990, Return of Organization Exempt from Income Tax, only if your gross receipts each year are normally more than $10,000. If a return is required, it must be filed by the 15th day of the fifth month after the end of your annual accounting period. The law imposes a penalty of $10 a day, up to a maximum of $5,000, when a return is filed late, unless there is reasonable cause for the delay.

You are not required to file Federal income tax returns unless you are subject to the tax on unrelated business income under section 511 of the Code. If you are subject to this tax, you must file an income tax return on Form 990-T. In this letter, we are not determining whether any of your present or proposed activities are unrelated trade or business as defined in section 513 of the Code.

You need an employer identification number even if you have no employees. If an employer identification number was not entered on your application, a number will be assigned to you and you will be advised of it. Please use that number on all returns you file and in all correspondence with the Internal Revenue Service.

Because this letter could help resolve any questions about your exempt status and foundation status, you should keep it in your permanent records.

If you have any questions, please contact the person whose name and telephone number are shown in the heading of this letter.

Sincerely yours,

Arturo A. Jacobs

District Director

# Exhibit E

SEATTLE OFFICE
second & seneca building
1191 second avenue
eighteenth floor
seattle, washington 98101-2939
TEL 206 464 3939 FAX 206 464 0125

OTHER OFFICES
portland, oregon
washington, d.c.
new york, new york
beijing, china
GSBLAW.COM

G≥
S
B⌐

GARVEY SCHUBERT BARER

A PROFESSIONAL SERVICE CORPORATION

*Please reply to* DAVID H. SMITH
dsmith@gsblaw.com
Direct: 206-816-1392

February 13, 2019

**VIA U.S. MAIL**

Brian T. Moran
United States Attorney, Western District of Washington
700 Stewart Street, Suite 5220
Seattle, WA 98101

Re:     Report of Violations of 42 U.S.C. § 290dd-2 by Clark County Sheriff's Office

Dear Mr. Moran:

We represent Daybreak Youth Services, Inc. ("Daybreak"), which operates a residential treatment center in Brush Prairie for teens who have the dual diagnosis of substance use disorder and mental illness. As required by 42 C.F.R. § 2.5, I write to report serious violations of the regulations promulgated by the Substance Abuse and Mental Health Service Administration ("SAMHSA") under authority of 42 U.S.C. § 290dd-2 by the Clark County Sheriff's Office ("CCSO").

As you may know, Section 543 of the Federal Public Health Services Act, 42 U.S.C. § 290dd-2, and its implementing regulations, 42 C.F.R. Part 2, prevent the disclosure of the identities of patients seeking substance use disorder treatment and the treatment facilities' patient records to law enforcement except under certain circumstances. Daybreak is covered by these protections because it is a "federally assisted program" as defined by 42 C.F.R. 2.12(b). CCSO has failed to obtain patient consent for release of protected records, nor has it followed the requirements of 42 U.S.C. § 290dd-2(b)(2)(C)[1] by obtaining a court order specifically authorizing the disclosure of patient records.[2] Compounding this error, CCSO failed to issue a valid subpoena to Daybreak to compel disclosure which would have given Daybreak and/or its patients the required opportunity to object to the disclosure.[3]

It is Daybreak's position that disclosure of patient records or identifying information to law enforcement without patient consent can only occur after (1) a court of competent jurisdiction issues a disclosure order based on a showing of good cause and (2) Daybreak receives a valid subpoena for this information.[4] Daybreak's attempt to cooperate with CCSO deputies to address their purported concerns

---

[1] See 42 C.F.R 2.61.
[2] The purpose of the order is to authorize the disclosure—not to compel the disclosure.
[3] See 42 C.F.R 2.61(b)(1).
[4] Id.



regarding patient safety[5] were improperly used as a justification for the issuance of search warrants when, upon the advice of counsel, Daybreak's staff refused to provided protected information to the agency. Without understanding or attempting to comply with federal law, CCSO applied for and received at least six[6] search warrants from the Clark County District Court for patient records in early September 2018 that included the names of *minor patients*[7] and another two from the Clark County Superior Court on September 7, 2018 directed towards Daybreak's email and electronic health records providers that contained the names of *ten minor patients*. The service of multiple search warrants at Daybreak's Brush Prairie office allowed CCSO to seize records for *all* of Daybreak's minor patients without a showing of good cause.[8] The items seized included reams of patient records, video footage of patients, four external drives and five computers.[9] The seized documents, drives and computers contain protected records of patient identities, diagnosis, prognosis and treatment relating to substance abuse education, prevention, training, treatment or rehabilitation for hundreds of minors, many of whom had no contact with Daybreak's Brush Prairie facility in 2018. Now, in direct contravention of 42 C.F.R. 2.13(a), the Clark County Prosecuting Attorney's Office is planning to use the unlawfully seized patient records to prosecute Daybreak patients and/or employees.

Not only were the procedural requirements of 42 C.F.R. Part 2 not followed, but it also remains unclear whether the necessary showing of good cause could have been made by CCSO. Despite the vague allegations made in the search warrant affidavits, no claim is made that the incidents under investigation by CCSO constituted an extremely serious crime[10] or that disclosure of patient information was necessary to investigate or prosecute an extremely serious crime and that information was unavailable from any other source.[11] In fact, the real reason the search warrants were requested is revealed in CCSO Sergeant Christopher Luque's affidavit in which he admits the triggering event was the refusal of Daybreak's Compliance Manager to voluntarily turn over "surveillance video for the date of May 4-6, 2018" upon the advice of Daybreak's General Counsel.[12] The only crime that appears to be under investigation pertaining to Daybreak's staff relates to a suspected violation of RCW 26.44.030, a gross misdemeanor offense,[13] and Daybreak has no reason to believe that any patient committed an extremely serious crime while at its facilities.

CCSO's violations of federal law are readily apparent. For example, CCSO did not apply for, nor receive, any court order authorizing disclosure of the substance use disorder records or patient identities. CCSO's wholesale seizure of computers swept up confidential communications and treatment records

---

[5] The actual concern related to the number of calls CCSO received from the Brush Prairie facility. See, Attachment A, Sheriff Atkins' June 7, 2018 letter to the Washington Department of Health.

[6] See Search Warrants, Attachment B.

[7] 42 C.F.R. 2.64(a) requires the use a fictitious name when referring to a patient.

[8] Daybreak's Spokane County facility was not the subject of CCSO concerns, but records of minors receiving treatment there were also seized.

[9] See Property Submission, CCSO, Attachment C.

[10] A crime that directly threatens death or serious bodily injury. See, 42 C.F.R. 2.63(a)(1).

[11] 42 C.F.R. 2.63(a)(2).

[12] See, Attachment B.

[13] See, RCW 26.44.080.



U.S. Attorney Brian T. Moran
February 13, 2019
Page 3

for hundreds of minor patients—far beyond what might be essential to investigate concerns related to the five named minor patients mentioned in the original search warrants or the ten in the second batch. CCSO has not claimed—and cannot claim— that the alleged crimes under investigation were "extremely serious" or that it had no other way of obtaining the requested surveillance video footage except to conduct a wholesale seizure of all patient records and identities.  These are only the most blatant examples of CCSO's violations of federal law.

Apparently no one in CCSO or its legal advisors understood the requirements of federal law, and neither the District nor Superior Court Judges were informed of the necessary legal standards and protections. That being said, ignorance of federal law, particularly by law enforcement officials, is no excuse for the violations committed against the confidentiality rights of Daybreak's minor patients.

It is also clear the Clark County Prosecuting Attorney's Office has failed to take the necessary steps to mitigate the harm caused by the improvident issuance of the search warrants.  When I shared the statutes and regulations restricting disclosure of patient records with Senior Clark County Deputy Prosecuting Attorney Colin Hayes on November 30, 2018 and invited him to meet in December to discuss our client's concerns,[14] he quickly declined the invitation.[15]

We are left with no choice but to bring this violation of federal law to your attention and request that you initiate an investigation to help safeguard the privacy rights of Daybreak's many minor patients and ensure proper respect for the law.  If you or the Assistant U.S. Attorney assigned to this matter have questions, please do not hesitate to contact me.

Very truly yours,

GARVEY SCHUBERT BARER, P.C.

By

David H. Smith

Enclosures

GSB:9839751.2

---

[14] See my November 30, 2018, letter, Attachment D.
[15] See DPA Colin Hayes' December 6, 2018 email, Attachment E.

# Exhibit F

```
G ≋
S
B ⌐
```

GARVEY SCHUBERT BARER

A PROFESSIONAL SERVICE CORPORATION

SEATTLE OFFICE
*second & seneca building*
*1191 second avenue*
*eighteenth floor*
*seattle, washington 98101-2939*
TEL 206 464 3939 FAX 206 464 0125

OTHER OFFICES
*portland, oregon*
*washington, d.c.*
*new york, new york*
*beijing, china*
GSBLAW.COM

*Please reply to* DAVID H. SMITH
*dsmith@gsblaw.com*
Direct: 206-816-1392

February 14, 2019

**VIA EMAIL (leslie.lopez@clark.wa.gov) AND US MAIL**

Leslie A. Lopez
Deputy Prosecuting Attorney, Civil Division
Office of the Clark County Prosecuting Attorney
P.O. Box 5000
Vancouver, WA 98666-5000

Re:     Daybreak Youth Services

Dear Ms. Lopez:

As you may know, we represent Daybreak Youth Services ("Daybreak") in connection with the administrative proceedings filed by the Department of Health ("DOH") in November 2018. We, rather than the Landerholm, P.S. firm, also represent Daybreak in connection with the investigation being conducted by the Clark County Sheriff's Office ("CCSO"). While our client has substantial concerns regarding CCSO's past actions towards Daybreak's patients and staff, it wishes to develop a better relationship with the Clark County law enforcement agencies and maintain its mutually beneficial arrangements with the Clark County Juvenile Court. To that end, I am reaching out to you in hopes that we can start a productive dialogue.

As part of this dialogue, I enclose the following documents for your consideration:

- Proposed Memorandum of Understanding ("MOU") between Daybreak and the Clark County Juvenile Court; (Attachment A)

- Proposed MOU between Daybreak and CCSO (Attachment B); and

- Proposed Stipulation and Protective Order between Daybreak and CCSO (Attachment C).

Based on my review of several CCSO incident reports, one of the factors complicating Daybreak's relationship with that agency has been a lack of common understanding regarding the regulations governing facilities that provide substance use disorder treatment to adolescents. Further, we are concerned that Daybreak's patients face disproportionate rates of arrest, criminal prosecution and detention based on behaviors that are manifestations of their underlying disorders. For these and other reasons, Daybreak believes the execution of MOUs between our client, on the one hand, and the CCSO



Leslie A. Lopez
February 14, 2019
Page 2

and Clark County Juvenile Court on the other, will assist all in understanding how to effectively deal with Daybreak's unique clientele.

As federal law controls on the issue of patient confidentiality, the MOUs will require the Juvenile Court to enter an order allowing Daybreak to provide information to the court and/or the probation counselor. They will help will familiarize CCSO and other law enforcement agencies with the strict disclosure limitations contained in 42 C.F.R. Part 2. Those regulations, for example, prohibit law enforcement agencies from obtaining patient records and identities except in limited circumstances. Had MOUs like the ones proposed been in place in 2018, none of the current issues likely would have developed. Notwithstanding that history, there is nothing preventing our clients from reaching a common understanding regarding the role and legal duties each have in assisting youth who suffer from substance use and mental health disorders.

Given the federal confidentiality protections that apply to the electronically stored information and patient records and identifying information that are currently in the possession of CCSO, Daybreak believes it is prudent for CCSO to agree to the proposed stipulated protective order regarding the use and re-disclosure of this information. Most importantly, the proposed stipulated protective order spells out the process CCSO must follow should this information be sought by a third-party through a Public Records Act request. If you have questions regarding the scope or language of the proposed stipulated protective order, please contact me at your earliest convenience to discuss any questions or concerns. If CCSO is unwilling to enter into a stipulated protective order, Daybreak will have no choice but to seek necessary relief from the U.S. District Court.

I also enclose as Attachment D a copy of Daybreak's Interim Patient Confidentiality Policy and Procedures for 2019 for your review. The new policy and procedures were adopted by Daybreak's Board of Governors effective February 4, 2019. Staff began its training on the new policy and procedures on February 14. If you or others have questions regarding the policy or its procedures, please feel free to call or email me.

Finally, in the interests of full disclosure, I enclose as Attachment E a copy of the letter sent February 13, 2019 to the United States Attorney for the Western District of Washington on behalf of our client. Under the circumstances, we felt Daybreak was legally obligated to bring CCSO's violations of 42 C.F.R. Part 2 to the attention of the U.S. Attorney's Office. We took this step reluctantly, but believe the law and circumstances left Daybreak no choice.

Very truly yours,

GARVEY SCHUBERT BARER, P.C.

By

David H. Smith
Enclosures

GSB:10025791.1 [41094.00200]

# Exhibit G



## Clark County Sheriff's Office
707 West 13th Street • PO Box 410 • Vancouver, WA 98666 • (360) 397-2366 • Fax (360) 397-2367

Chuck E. Atkins, Sheriff

Washington State Department of Health
Health Systems Quality Assurance
Complaint Intake
PO Box 47857
Olympia WA  98504-7857

June 7, 2018

Re: Daybreak Youth Services Complaint

I am writing today regarding concerns my office has about Daybreak Youth Services located at 11910 NE 154th St, Brush Prairie, Washington. This facility is an inpatient and outpatient youth facility which treats substance abuse disorders and mental health issues. I believe Daybreak Youth Services is licensed by the Washington State Department of Health.

Over the last several months the Clark County Sheriff's Office has responded to numerous calls for service at the Brush Prairie facility. Many of these calls involve juvenile runaways, physical altercations, and sexual assaults. Calls to the facility are so numerous that our office now specifically tracks calls for service at this location.

Through our contacts with staff and clients at the facility we are now concerned for the safety of the staff working in the facility as well as the youth who are receiving treatment at the facility. We are also concerned that staff is reluctant, either on their own initiative or by direction from management, to report crimes or disturbances occurring at the facility.

Specifically, on May 28, 2018, deputies from my office responded to a reported disturbance at the facility and spoke to staff about facility conditions. One of my deputy's wrote the following in the resulting police report:

> I spoke with multiple staff members who said they lose control over the facility all the time and are told not to call 911. Dispatch confirmed that an unidentified person called 911 and it did not come from the staff even after losing total control of the youth inside. (CCSO 18-4941)

In addition to my office's response to calls at the facility, I recently learned that Clark County Juvenile Court has significant concerns over the safety of the juveniles residing at the facility. It's my understanding that county's juvenile court administrator has, or will shortly, prohibit juvenile court staff from placing juveniles in the Brush Prairie facility.



### Clark County Sheriff's Office
707 West 13th Street • PO Box 410 • Vancouver, WA 98666 • (360) 397-2366 • Fax (360) 397-2367

Chuck E. Atkins, Sheriff

In the interest of writing a brief letter I have not included all of the information we have available about our concerns with this facility. I will make my staff available as needed in order to assist the Department of Health in exercising its regulatory responsibility. I also believe that the Clark County Juvenile Court will be able to provide additional information as well.

Please accept this letter as my formal request for an investigation into the conditions and management practices at the Daybreak Youth Services facility in Brush Prairie.

Sincerely,

*Chuck E. Atkins*

Sheriff Chuck E. Atkins

# Exhibit H



**S S J H** Sherman Sherman Johnnie & Hoyt, LLP

*Attorneys at Law*

www.shermlaw.com

May 22, 2019

**Via Email via leslie.lopez@clark.wa.gov**
**and First-Class Mail**
Leslie Lopez
Deputy Prosecuting Attorney, Civil Division
Office of the Clark County Prosecuting Attorney
P.O. Box 5000
Vancouver, WA 98666-5000

### Re: Daybreak Youth Services

Dear Ms. Lopez:

Our firm represents Daybreak Youth Services ("Daybreak"). Our office has spent several weeks reaching out to you to confer on treatment of its patient records taken by the Clark County Sheriff's Office and a framework for handling reports going forward. This letter is to outline those matters and reiterate my client's desire to handle these matters cooperatively.

### A. 42 C.F.R. Part 2

As you know, Daybreak provides mental health and substance use disorder treatment to adolescents. It is the only program of its kind in the state of Washington, in that it provides both substance use disorder and mental health treatment.

As a substance abuse disorder treatment provider, Daybreak is subject to federal regulations under 42 C.F.R. Part 2. Those regulations strictly limit what information may be shared by a Part 2 program such as Daybreak. The confidentiality regulations – which are far more protective than HIPAA or any equivalent state law – are intended to ensure that substance use disorder patients are not deterred from seeking treatment due to the possibility of disclosure. 42 C.F.R. § 2.2.

The federal regulations require "unconditional compliance" and prevent disclosure of any patient information, of any kind, absent an exception stated elsewhere in the Part 2 regulations. 42 C.F.R. §§ 2.11, 2.13. They apply to "any information, whether recorded or not" about a substance use disorder patient, including their identity, any information about their treatment, or any other identifying information at all. 42 C.F.R. § 2.11.

The Part 2 regulations' exceptions open a narrow window for a law enforcement agency to obtain patient records as part of a criminal investigation. The law enforcement agency must

P.O. Box 2247
Salem, Oregon 97308

693 Chemeketa Street NE
Salem, Oregon 97301
Ph. 503-364-2281
Fx. 503-370-4308

| Leslie Lopez | Page 2 | May 22, 2019 |

obtain an order under 42 C.F.R. § 2.65 and/or § 2.66. Both sections include the following requirements (among others):

- The application and proceedings must use fictitious patient names and may not contain any patient-identifying information;

- The Court must make a finding that the public interest in disclosure outweighs the potential injury to the patient and the ability of the program to provide services; and

- The order must strictly limit disclosure to investigators.

If the investigation is into patients rather than the program itself, such order cannot be entered until the program (i.e., Daybreak) has notice and an opportunity to appear. Alternately, if the investigation is into the program itself, then the order must provide that none of the records obtained may be used to conduct an investigation into any patient. 42 C.F.R. §§ 2.65, 2.66.

These federal regulations override any contrary state law. "[N]o state law may either authorize or compel any disclosure prohibited by the regulations in this part." 42 C.F.R. § 2.20 (emphasis added). Violation of Part 2 is subject to criminal penalties. 42 C.F.R. § 2.3.

### B. Clark County Is Continuing To Hold Patient Records In Violation Of 42 C.F.R. Part 2.

Clark County's applications and orders for search warrants executed in September do not appear to have complied with a single one of the above-listed requirements under the federal regulations. That said, Daybreak does not wish to unnecessarily litigate the circumstances in which its patients' records were seized.

The more pressing issue is that Clark County is continuing to hold patient records in violation of 42 C.F.R. Part 2. There is no order in place requiring the redaction of patient identification, restricting access, or even preventing them from being produced in response to a public records request. Nor has there been any effort to put patients on notice pursuant to § 2.65(b). Every day that goes by without compliance with the federal rules risks another unauthorized disclosure of patient records. And that, in turn, risks chilling other potential patients from seeking treatment for their substance abuse.

We have been reaching out for several weeks to find out how the Clark County Sheriff's Office intends to rectify this situation. Given Daybreak's obligation to protect its patients' records, we would like an answer as soon as practicable.

### C. Finding A Way Forward

We recognize that Daybreak poses unique challenges for the Clark County Sheriff's Office. Its client population is, by definition, a difficult one. Additionally, Daybreak is subject to federal confidentiality regulations that are likely unfamiliar to the offices of the Sheriff and the

| Leslie Lopez | Page 3 | May 22, 2019 |

Clark County Prosecuting Attorney. Nonetheless, those regulations must be followed.

Our client would prefer to handle these matters in cooperation with the Clark County Sheriff's office, which is why we have been reaching out to you. Daybreak provided your office with a detailed explanation of the applicable federal rules on November 30, 2018. It followed with further explanation of those regulations, and a proposed Memorandum of Understanding regarding these matters, on February 14, 2019. Our office has reached out to you by telephone and email over the last several weeks hoping to follow up on the same. But we have yet to receive any substantive response (or any response at all in the last two weeks).

We hope to set up a meeting with your office and a representative of the Clark County Sheriff's Office in the very near future. I am available May 28 and 29, the morning of May 30, or the afternoon of May 31. Please advise when, during that time frame, you and a representative of the Clark County Sheriff's Office will be available.

Yours truly,

SHERMAN, SHERMAN, JOHNNIE & HOYT, LLP

Justin M. Thorp
justin@shermlaw.com

JMT.sb
Cc:     Client

# Exhibit I

**S S J H** Sherman Sherman Johnnie & Hoyt, LLP

*Attorneys at Law*

www.shermlaw.com

May 22, 2019

**Via Email Chris.Luque@clark.wa.gov**
**and First-Class Mail**
Sergeant Chris Luque
Enforcement Branch
Clark County Sheriff's Office
707 W. 13th Street
Vancouver, WA 98660

> **Re:  Daybreak Youth Services – Interview Requests: Angela Ball, Annette**
> **Klinefelter, Cecilia Hubert, Casandra Showalter, Denise Wilson, Grace Demsky,**
> **Jamie Engstrom, Katie Grace, Tammy Frazier, Michael Trotter**

Dear Sergeant Luque:

Our firm represents Daybreak Youth Services ("Daybreak"). This is to respond, on behalf of Daybreak, to your request for interviews from multiple staff members of Daybreak, listed above.

Although your interview request does not say what the subject of the investigation is, any interview would presumably cover incidents involving some of Daybreak's patients. Such information is strictly confidential under federal law. Daybreak is a substance abuse disorder treatment program that is subject to federal regulations under 42 C.F.R. Part 2. Those regulations strictly limit what information may be shared by a Part 2 program such as Daybreak. They require "unconditional compliance" and prevent disclosure of <u>any</u> patient information, of any kind, absent an exception stated elsewhere in the Part 2 regulations. 42 C.F.R. §§ 2.11, 2.13. Violation of Part 2 is subject to criminal penalties. 42 C.F.R. § 2.3.

These federal regulations override any contrary state law. "<u>[N]o state law may either authorize or compel any disclosure prohibited by the regulations in this part.</u>" 42 C.F.R. § 2.20 (emphasis added). Thus, Daybreak is not legally authorized to release patient information absent an exception in the federal regulations, none of which appear to apply here.

The Part 2 regulations would allow Daybreak to disclose patient information to the Clark County Sheriff's Office once it has obtained a court order allowing such disclosure under 42 C.F.R. § 2.65 and/or § 2.66. We would be glad to confer on a motion and order under that section. However, until such an order has been entered, Daybreak is bound to preserve the confidentiality of its patients' information.

693 Chemeketa Street NE
Salem, Oregon 97301
Ph. 503-364-2281
Fx. 503-370-4308

P.O. Box 2247
Salem, Oregon 97308

Please feel free to contact me with any questions or to discuss this further. I look forward to working with you on this matter.

Yours truly,

SHERMAN, SHERMAN, JOHNNIE & HOYT, LLP

Justin M. Thorp
justin@shermlaw.com

JMT/sb
Cc:      Client

# Exhibit J

# Daybreak Youth Services strives to move forward

**Brush Prairie youth treatment facility fights to keep licenses as charges weighed**



(https://pcdn.columbian.com/wp-content/uploads/2019/05/1004566344-05-21-Daybreak-folo_02.jpg)

Regina Somerville, daytime shift lead at Daybreak Youth Services, works in the staff and nurses station near the common living area for girls at the Brush Prairie facility Tuesday morning. (Amanda Cowan/The Columbian)

Buy this photo

By **Jerzy Shedlock (/author/jshedlock)**, Columbian Breaking News Reporter
Published: May 24, 2019, 6:01 AM

9

BRUSH PRAIRIE — Daybreak Youth Services' operational licenses for its Brush Prairie facility "have been and remain active," said newly appointed CEO Thomas Russell.

 

That's the key message Russell wants the community to know as Daybreak rebuilds its image and trust following allegations that came to light in September of sexual assault, problems with client and staff safety, (https://www.columbian.com/news/2018/sep/11/deputies-search-daybreak-youth-services-regarding-multiple-allegations-of-sexual-misconduct/) and what investigators saw as a pattern of inadequate reporting as required by law.

Six months since the state Department of Health notified Daybreak of its intent to revoke the facility's licenses, (https://www.columbian.com/news/2018/nov/28/daybreak-youth-services-may-lose-brush-prairie-licenses/) the center remains open, providing substance abuse and mental health treatment while it appeals the revocation process.

On Tuesday morning, the halls of the facility at 11910 N.E. 154th St. were empty of the 13 patients receiving treatment there. The youth generally have counseling and classes during the day.

Despite their absence, a deck of cards was strewn across a coffee table in the girls' lounge area. Unkempt beds could be seen in patients' rooms. Posters with messages of encouragement hung on the walls. Another noticeable fixture were the cameras mounted on the walls and ceilings in nearly every room of the facility.

"I think people view (the facility) as a normal social environment, but it's not. The staff is handling some of the toughest issues that teenagers can face. … Experiences have made these kids draw inward. We're trying to get them out of that space," Russell said.

The three-member team that guided The Columbian through the mazelike halls of the treatment center — hidden in a neighborhood on a dead-end road in rural Clark County — was eager to share the changes made in the past six months. Changes include the implementation of updated care options, sturdier security doors and new gym equipment.

But the future of the facility remains uncertain.

## Potential criminal charges

The Clark County Sheriff's Office started investigating alleged criminal conduct at the Brush Prairie facility in June. About a month ago, investigators handed over a cache of documents to the Clark County Prosecuting Attorney's Office for consideration of criminal charges, sheriff's Sgt. Brent Waddell said Monday.

Waddell described the case as a "pretty tangled investigation."

"There are a lot of people. Some have way more culpability than others. It will be up to prosecutors whether or not anyone is charged," he said.

Chief Deputy Prosecutor Scott Jackson said the attorney handling the case requested that investigators follow up on some of the provided information, which is normal when considering charges. Jackson said a decision should be made within a few weeks.

The allegations from the sheriff's office's investigation prompted a separate investigation from the state Department of Health.

On Nov. 19, the state's Residential Treatment Facilities and Behavioral Health Agencies program notified the youth outpatient and inpatient treatment facility of its intent to revoke its licenses.

Daybreak appealed the revocations, which kept the Brush Prairie facility open. In its appeal, the nonprofit agency argued the revocations were based on "inaccurate and unsubstantiated" claims.

Russell said the agency's stance, today, is on improving care and learning from the past.

"What happened before I was here, I don't know," Russell said in a phone interview on May 14. "In terms of ownership and responsibility, we're taking a hard look at ensuring our policies align with (federal confidentiality laws and regulations) so staff clearly understands and complies, which overall speaks to the changes we've been making."

Russell started about seven weeks ago, and he said leadership has been reorganized across the agency. Daybreak has also implemented new policies regarding confidentiality, reporting and new staff trainings.

It is keeping the health department updated on the changes and will continue to work with officials.

"The kids and their families demonstrate great courage when they call for help, and we intend to keep their trust," the agency's leadership said.

Daybreak's lawyer, David H. Smith, takes a more assertive stance in letters to the U.S. Attorney for the Western District of Washington and local authorities.

In a letter to U.S. Attorney Brian T. Moran, Smith claims that the sheriff's office violated federal law with its "wholesale seizure of computers" and "swept up confidential communications and treatment records for hundreds of minor patients — far beyond what might be essential to investigate concerns related to the five minor patients mentioned in the original search warrants or the 10 in the second batch."

The law, 42 C.F.R. Part 2, prevents the disclosure of identities of patients seeking substance use disorder treatment and facilities' patient records to police except under certain circumstances, such as "extremely serious" crimes. Smith said investigators have not and cannot claim that the allegations fit this criteria.

# Community collaboration

The next hearing on the license revocation appeal, which will not be open to the public, is scheduled for June 19, said Julie Graham, public information officer for the Department of Health. Department investigators, lawyers and Daybreak leaders will meet to "see where we are in terms of solutions," Graham said.

A second public hearing in November will determine the status of the licenses and whether "there can be a settlement to ensure public safety," she said.

In the meantime, department officials are monitoring the Brush Prairie facility by means of on-site visits, including spot inspections, Graham said.

The health department is one of many community partners Daybreak works with, Russell said, to ensure a continuum of care for patients so they don't return to the same environment that prompted their need for help. Having state representatives collaborate with Daybreak about policy and transparency is nothing new, the CEO said. Earlier this month, the health department renewed Daybreak's residential treatment facility license, he said.

At one point, since the investigation began in full, the facility was down to as few as six patients. As of Tuesday, that number had about doubled, said Sarah Spier, Daybreak's director of external communications. The number fluctuates; there were as many as 17 patients recently, three shy of its 20-patient limit until more staff is hired.

The facility's capacity is 45 patients, Russell said. A number of referrals to the facility "dried up in the process of rebuilding," he said. Stakeholders have made the need for the facility apparent, he said, expressing that there are hundreds of kids who require services. Daybreak says it serves around 1,000 patients statewide each year.

Staffing was reduced due to fewer patients, and because of the agency's reorganization. Russell said employees' responsibilities were examined and rearranged to line up with new policies aimed at lawful reporting and ensuring patient confidentiality.

Russell and Spier said they did not know if any of the employees working at the Brush Prairie facility and named in investigative documents were let go. When asked about former CEO Annette Klinefelter, they only said she would not be returning.

In the weeks he's been on board, Russell said there has been some reluctance from partners to refer people to the facility. Referrals come from counseling organizations, medical providers and insurers, among other sources. Spier said Daybreak has spent months quickly and quietly rebuilding relationships.

Clark County Juvenile Court staff and Superior Court judges, after learning of the sheriff's office's investigation, in late June ceased recommending the facility's inpatient services to families and guardians, who ultimately make the decision of what services to use. Juvenile Court Administrator Christine Simonsmeier said Monday that the practice has not resumed, but she has met with Daybreak officials about how to make it happen.

"We do value this program. It's very much needed, but we have an obligation to the community" to see the appeal process through to the end, Simonsmeier said.

# New beginnings

Daybreak is implementing new training, such as courses on trauma informed care. Part of the training focuses on the diverse backgrounds of patients, whose histories may include homelessness and sexual abuse, Spier said. The training helps staff recognize signs associated with trauma and act to prevent harm to patients, she said.

Nurses are currently being interviewed for around-the-clock evaluation and treatment services that are "desperately needed in Clark County," Spier said. The nurses will be on hand to help clients with suicidal ideations and other crises. The agency is waiting for increased staff numbers to use a vacant section of the building for the psychiatric care.

Daybreak is also bringing a life enrichment program to Southwest Washington, which was implemented at its Spokane facility three years ago.

The program allows patients to partake in community events and physical activities, and connects them to institutions to build financial equity, among other "holistic therapy" options.

Spier said before the life enrichment program began, the completion rate for patients was around 82 percent. The program has increased the rate to between 95 percent and 97 percent.

Why the Brush Prairie and Spokane facilities operated differently is unclear. Russell said they essentially ran independently of one another. Now, the facilities will be sharing staff and working together.

"We have expertise in Spokane we need here," and vice versa, the CEO said.



## Jerzy Shedlock (/author/jshedlock)

**Columbian Breaking News Reporter**
📱 **360-735-4522**
👤 **@col_cops (https://twitter.com/col_cops)**
✉ **Send an Email (mailto:jerzy.shedlock@columbian.com)**

---

**0 Comments**                                                              Sort by   **Newest**

    Add a comment...

Facebook Comments Plugin

Community guidelines
(/guidelines/)

## Shop Now

Apple Thunderbolt cable (0.5 m) (https://aax-us-east.amazon-
adsystem.com/x/c/QtKbnBj-B-
zQDK6G5cM_9QcAAAFrCrEiyAEAAAE0Ab7hGws/https://w…
$29.00 (https://…)
m/dp/B00WVDGZM6/ref=sm_n_au_dka_US_pr_fal_0_0?
adId=B00WVDGZM6&creativeASIN=B00WVDGZM6&linkId=
20&linkCode=w41&ref-
refURL=https%3A%2F%2Fwww.columbian.com%2Fnews%…
youth-services-strives-move-
forward%2F&slotNum=0&impToken=vzCC587js6.VDU.LWp…

Apple Thunderbolt to Gigabit Ethernet Adapter (https://aax-us-
east.amazon-adsystem.com/x/c/QtKbnBj-B-
zQDK6G5cM_9QcAAAFrCrEiyAEAAAE0Ab7hGws/https://w…
$27.00 (https://…)
Thunderbolt-Gigabit-Ethernet-
Adapter/dp/B011K4RKFW/ref=sm_n_au_dka_US_pr_fal_0_1?
adId=B011K4RKFW&creativeASIN=B011K4RKFW&linkId=4…
20&linkCode=w41&ref-
refURL=https%3A…m%2Fnews%…
youth-services-st
forward%2F&slot                    7js6.VDU.LWp…

Apple Thunderbolt to FireWire Adapter (https://aax-us-
east.amazon-adsystem.com/x/c/QtKbnBj-B-
zQDK6G5cM_9QcAAAFrCrEiyAEAAAE0Ab7hGws/https://w…
$29.00 (https://…)
Adapter/dp/B00SQ2CJUS/ref=sm_n_au_dka_US_pr_fal_1_0?
adId=B00SQ2CJUS&creativeASIN=B00SQ2CJUS&linkId=4…

OMorc 3-in-1 Mini DisplayPort (Thunderbolt)To DVI VGA…
(https://aax-us-east.amazon-adsystem.com/x/c/QtKbnBj-B-
zQDK6G5cM_9QcAAAFrCrEiyAEAAAE0Ab7hGws/https://w…
$13.99 (https://…)
Thunderbolt-Adapter-MacBook-
ThinkPad/dp/B00K43Q8BS/ref=sm_n_au_dka_US_pr_fal_1…
adId=B00K43Q8BS&creativeASIN=B00K43Q8BS&linkId=41…



Ad (https://aax-us-east.amazon-adsystem.com/x/c/QtKbnBj-B-zQDK6G5cM_9QcAAAFrCrEiyAEAAAE0Ab7hGws/https://affiliate-
program.amazon.com/home/ads/ref=nn_hu_dka_US_logo?adId=logo&creativeASIN=logo&linkId=417d75f93f494b43a9d8a9d622a2367f&tag=thecolumbian-
20&linkCode=w41&ref-refURL=https%3A%2F%2Fwww.columbian.com%2Fnews%2F2019%2Fmay%2F24%2Fdaybreak-youth-services-strives-to-move-
forward%2F&slotNum=0&impToken=vzCC587js6.VDU.LWpC4Bg&adType=smart&adMode=auto&adFormat=dynamicSessionTimestamp=1559252509679&ac-
ms-src=none&ad-id=ad)
(https://aax-us-east.amazon-adsystem.com/x/c/QtKbnBj-B-
zQDK6G5cM_9QcAAAFrCrEiyAEAAAE0Ab7hGws/https://www.amazon.com/adprefs/ref=sm_n_au_dka_US_ac?tag=thecolumbian-20&linkCode=w41)

## BLOGS (HTTP://BLOGS.COLUMBIAN.COM)                    +

# Exhibit K

## STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

STATE OF WASHINGTON, )
    Plaintiff )
          )
          )
V.         )    **SEARCH WARRANT**
          )
■■■■■■■    )
&         )
■■■■■■■■■■■■■ )
          )
          )
    Defendant   )

1

2     The people of the State of Washington, to any Sheriff, Police Officer, or Peace Officer in Clark County.

3 Proof by written affidavit, under oath, made in conformity with the State of Washington Criminal Rules for

4 Courts of Limited Jurisdiction, rule 2.3, having been made to me this day by Clark County Sheriff's Office

5 Sergeant Christopher Luque, that there is probable cause for the issuance of a search warrant on the grounds

6 set forth in the State of Washington Criminal Rules for Courts of Limited Jurisdiction, rule 2.3, Section (c).

7

8     You are therefore commanded, with the necessary and proper assistance, to make a diligent search,

9 good cause having been shown therefore, of the following described property, within 10 days of the issuance of

10 this warrant:

11

12     Evidence of the crime of RCW 9A.46.020, Harassment and RCW 26.44.030, Duty and Authority to

13 Notify to wit;

14

15 LOCATION/ PERSON TO BE SEARCHED:

16

17   1.   To retain, seize and analyze evidence item number 10, labeled "Dayshift ESD", and collected on

18     September 11, 2018 during a search warrant at Daybreak Youth Services. This item has been

19     identified as evidence number 10 under Clark County Sheriff's Office case number 18006746, which

20     is being held in secured storage at the Clark County Sheriff's Office Property and Evidence located at

21     812 W 11th Street, Suite 1, Clark County State of Washington;

22

23   2.   To search, seize and analyze evidence items four (4) to fifty one (51), under Clark County Sheriff's

24     Office case number 18006746, to include the electronic contents of the computers and other

25     electronic storage devices under these evidence item numbers; which were collected under the

26     authority of a search warrant on September 11, 2018 from Daybreak Youth Services and are being

*SEARCH WARRANT EXECUTION: DATE:* ⹌⹌⹌ *HOUR:* ⹌⹌⹌ *BY:* ⹌⹌⹌⹌⹌

1

**STATE OF WASHINGTON**
**IN AND FOR THE COUNTY OF CLARK**

1  held in secured storage at the Clark County Sheriff's Office Property and Evidence located at 812 W
2  11th Street, Suite 1. Clark County State of Washington;

3

4  FOR THE FOLLOWING PROPERTY/EVIDENCE:

5

6  1.  Records showing the intake, and discharge dates of the involved parties, specifically the partially
7      identified residents of Daybreak Youth Services, ███████████

8

9  2.  Documentation confirming the complete name, date of birth, address and phone number for
10     ███████████

11

12 3.  Records, documents, scheduling information, payroll ledgers; whether electronic or physical
13     showing the on duty staff or other witnesses, who were present during the occurrence or reporting
14     thereof the involved incident on or about the date of September 8, 2018;

15

16 4.  Any and all employee files, documents, investigations, or otherwise stored data for or naming
17     ███████████ Including but not limited to; the complete and un-redacted case file
18     with any and all notes, discipline, termination documents, or other counseling received by ███████
19     during employment;

20

21 5.  Disciplinary records and investigations for any staff of Daybreak Youth Services as a result of the
22     failure to act, report or otherwise prevent this incident. Specifically including, but not limited to the
23     employee files, employee records, or other stored documents of any employee who received
24     corrective action, termination or other corrective counseling, which would contribute evidence in the
25     crime of RCW 26.44.030, Duty and Authority to Notify;

26

27 6.  Internal memos, emails, and any other documents whether in electronic or physical form,
28     pertaining to the threats committed against ███████ by Daybreak Youth Services client ███████
29     Specifically, but not limited to any emails or other items of documentation confirming the knowledge
30     of this incident by any staff members or officers of Daybreak Youth Services;

31

32 7.  Any and all client records, shift notes, and incident reports as stored or entered into "CareLogic"
33     or other reporting system used and pertaining to, naming, or anyway involving ███████ and
34     ███████ These documents to include the complete un-redacted case file with any and all notes,
35     medical records, treatments, meetings, and staff contact involving the aforementioned party.

*SEARCH WARRANT EXECUTION: DATE:* _____ *HOUR:* _____ *BY:* _____

## STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

8. Documentation, to include policies, procedures, common practice, and/or training pertaining to the mandatory reporting of incidents to include threats, assaults, and harassment for youth and other residents of the Daybreak Youth Services facility;

9. Computer-related passwords and other data security devices designed to restrict access to or hide computer software, documentation, or data. Data security may consist of hardware, software or other programming code;

10. Digital data and surveillance video that may be kept on any computer related storage device collected under the listed evidence items. The specific data will be (or will contain or incorporate) digital video and/or image files depicting evidence of the threats of harm involving ▇▇▇▇▇ and ▇▇▇▇ on or about the date of September 8, 2018, any digital data related to the crime of RCW 9A.46.020, Harassment, and any digital "user attribution" evidence to include, but not limited to, registry information, configuration files, user profiles, user logins (and the data associated with the foregoing, such as file creation and last accessed dates) that may be evidence of who used, viewed or controlled the computer or storage medium at a relevant time;

11. Photographs, of the scene, including still photos, negatives, digital images, digital video, video tapes, slides, films, undeveloped film, and the contents therein, in particular, photographs of evidence collected, victims, witnesses, suspects, and cc-conspirators;

AND TO SEIZE THEM IF FOUND and bring them forthwith before the Court according to law.

This Search Warrant was issued this __19__ day of __September__ 20__18__ at __12:37__ am/pm.

By the Honorable _____

Judge of the District Court

County of Clark

State of Washington

*SEARCH WARRANT EXECUTION: DATE:_____ HOUR:_____ BY:_____*

3

# Exhibit L

## STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

STATE OF WASHINGTON,
        Plaintiff

V.

████████████████

Cecilia E. Hubert ████████████

Michael S. Trotter ████████████
Annette Arlene Klinefelter ████████████

       Defendant(s)

# SEARCH WARRANT

1

2      The people of the State of Washington, to any Sheriff, Police Officer, or Peace Officer in Clark County:
3   Proof by written affidavit, under oath, made in conformity with the State of Washington Criminal Rules for
4   Courts of Limited Jurisdiction, rule 2.3, having been made to me this day by Clark County Sheriff's Office
5   Sergeant Christopher Luque, that there is probable cause for the issuance of a search warrant on the grounds
6   set forth in the State of Washington Criminal Rules for Courts of Limited Jurisdiction, rule 2.3, Section (c).
7

8      You are therefore commanded, with the necessary and proper assistance, to make a diligent search,
9   good cause having been shown therefore, of the following described property, within 10 days of the issuance of
10  this warrant:
11

12     Evidence of the crime of RCW 9A.36.041, Assault in the Fourth Degree and RCW 26.44.030, Duty and
13  Authority to Notify to wit;
14

15  **LOCATION/ PERSON TO BE SEARCHED:**
16

17    1.  **To retain, seize and analyze evidence item number 17, labeled "Daily Incident Reports by**
18        **Michael Trotter",** and collected on September 11, 2018 during a search warrant at Daybreak Youth
19        Services. This item has been identified as evidence number 17 under Clark County Sheriff's Office
20        case number 18006746, which is being held in secured storage at the Clark County Sheriff's Office
21        Property and Evidence located at 812 W 11th Street, Suite 1, Clark County State of Washington;
22

23    2.  **To search, seize and analyze evidence items four (4) to fifty one (51),** under Clark County Sheriff's
24        Office case number 18006746, to include the electronic contents of the computers and other
25        electronic storage devices under these evidence item numbers; which were collected under the
26        authority of a search warrant on September 11, 2018 from Daybreak Youth Services and are being

*SEARCH WARRANT EXECUTION: DATE:* 09-25-18 *HOUR:* 0931 *BY:* Luqu 9194

1

## STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

1    held in secured storage at the Clark County Sheriff's Office Property and Evidence located at 812 W

2    11th Street, Suite 1, Clark County State of Washington;

3

4    <u>FOR THE FOLLOWING PROPERTY/EVIDENCE:</u>

5

6    1.  Records showing the intake, and discharge dates of the involved parties, specifically the

7        residents of Daybreak Youth Services, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉ and ▉▉▉▉

8

9

10    2.  Documentation confirming the complete name, date of birth, address and phone number for

11

12

13    3.  Records, documents, scheduling information, payroll ledgers; whether electronic or physical

14        showing the on duty staff or other witnesses, who were present during the occurrence or reporting

15        thereof the involved incident on or about the date of August 7, 2018;

16

17    4.  Any and all employee files, documents, investigations, or otherwise stored data for or naming

18

19        Including but not limited to; the complete and un-redacted case file with any and all notes, discipline,

20        termination documents, or other counseling received by ▉▉▉▉▉▉▉▉▉▉

21        Grace during employment;

22

23    5.  Disciplinary records and investigations for any staff of Daybreak Youth Services as a result of the

24        failure to act, report or otherwise prevent this incident involving ▉▉▉▉▉▉▉▉▉

25        Specifically including, but not limited to the employee files, employee records, or other stored

26        documents of any employee who received corrective action, termination or other corrective

27        counseling, which would contribute evidence in the crime of RCW 26.44.030, Duty and Authority to

28        Notify;

29

30    6.  Internal memos, emails, and any other documents whether in electronic or physical form,

31        pertaining to the assault committed on ▉▉▉▉▉▉▉▉ by Daybreak Youth Services client ▉▉▉▉▉

32        ▉▉▉▉. To include any documentation pertaining to the medical treatment provided or injuries to

33        ▉▉▉▉▉▉▉▉ as a result of this assault. Specifically, but not limited to any emails or other items of

34        documentation confirming the knowledge of this incident by any staff members or officers of

35        Daybreak Youth Services;

36

37    7.  Any and all client records, shift notes, and incident reports as stored or entered into "CareLogic"

38        or other reporting system used and pertaining to, naming, or anyway involving ▉▉▉▉▉▉ and

39        ▉▉▉▉▉▉ These documents to include the complete un-redacted case file with any and all

40        notes, medical records, treatments, meetings, and staff contact involving the aforementioned party;

*SEARCH WARRANT EXECUTION: DATE:* 05-25-18 *HOUR:* 0931 *BY:* Lyn Ison

2

## STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

1

2   8. Documentation, to include policies, procedures, common practice, and/or training pertaining to
3      the mandatory reporting of incidents to include threats, assaults, and harassment for youth and other
4      residents of the Daybreak Youth Services facility;

5

6   9. Computer-related passwords and other data security devices designed to restrict access to or
7      hide computer software, documentation, or data. Data security may consist of hardware, software or
8      other programming code;

9

10  10. Digital data and surveillance video that may be kept on any computer related storage device
11      collected under the listed evidence items. The specific data will be (or will contain or incorporate)
12      digital video and/or image files depicting evidence of the assault involving ▮▮▮▮▮▮▮▮ and
13      ▮▮▮▮▮▮▮▮ on or about the date of August 7, 2018, any digital data related to the crime of RCW
14      9A.36.041, Assault in the Fourth Degree, and RCW 26.44.030, Duty and Authority to Notify; and any
15      digital "user attribution" evidence to include, but not limited to, registry information, configuration files,
16      user profiles, user logins (and the data associated with the foregoing, such as file creation and last
17      accessed dates) that may be evidence of who used, viewed or controlled the computer or storage
18      medium at a relevant time;

19

20  11. Photographs, of the scene, including still photos, negatives, digital images, digital video, video tapes,
21      slides, films, undeveloped film, and the contents therein, in particular, photographs of evidence
22      collected, victims, witnesses, suspects, and co-conspirators;

23

24

25  AND TO SEIZE THEM IF FOUND and bring them forthwith before the Court according to law.

26

27      This Search Warrant was issued this _____ day of _____, 20____, at _____ am/pm.

28      ╳⚪⚪⚪⚪⚪⚪⚪⚪  *Digitally signed by user Tangados*
                           *Reason*
                           *Date: 09/24/2018 02:03:50 PM*

29      By the Honorable _____

30                      Judge of the District Court

31                      County of Clark

32                      State of Washington

*SEARCH WARRANT EXECUTION: DATE:* 09-25-18 *HOUR:* 8137 *BY:* ▮▮▮▮▮ 4530

# EXHIBIT M

## DISTRICT COURT OF THE STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

1  number of Jennifer Walker.  Savannah stated that Jennifer had quit after raising multiple concerns for the
2  safety of the children and staff.
3
4  **JENNIFER WALKER**
5      On July 18, 2018 at approximately 2120 hours, Jennifer Walker knowingly and willingly agreed to
6  conduct a recorded interview.  Jennifer was unavailable to meet in person and conducted this interview via
7  telephone.  Jennifer was a past employee of Daybreak Youth Services and worked as a Skills Coach.
8  Jennifer subsequently left Daybreak on her own accord due to her concerns for safety and the lack of
9  policies and procedures within Daybreak.  Jennifer was employed from August, 2017 to the weekend of May
10  5, 2018.  Jennifer's employment was at an "on call basis" due to her working at the time, and currently being
11  employed with OHSU in the trauma and ICU unit.
12
13      During the interview, Jennifer expressed multiple concerns with the procedures and daily operations of
14  Daybreak.  Jennifer said during what she believed was the month of December, 2017 (later confirmed to be
15  January 1, 2018) she was working on the male side of the E&T (Evaluate and Treat), while another staff
16  member named Lacey Lynch was working on the female side of the E&T.  Jennifer described seeing the TV
17  monitor, which shows the cameras for that department depicting Lacey in a room with ▇▇▇▇▇▇ who
18  was a client of the E&T department.  Jennifer could clearly see Lacey had removed her shirt, leaving herself
19  exposed in her bra.  Lacey was having ▇▇▇▇▇▇ massage her shoulders with lotion.  Jennifer believed
20  that ▇▇▇▇▇ was approximately 16-17 years of age.
21
22      Jennifer, believing this was being done in a sexual nature, in addition to being illegal took this complaint
23  to her supervisor, Cecilia Hubert.  Jennifer was appalled by Cecilia's reply in what Jennifer said was a
24  dismissal.  Jennifer specifically recalled Cecilia telling her that she did not have enough staff and that she
25  could not deal with it.  Cecilia additionally said Lacey "Didn't mean any harm by it."
26
27      I confirmed that Jennifer observed this via the cameras installed within the facility, to which she replied
28  affirmatively.  Jennifer was unaware if this incident had been reported to law enforcement and said no
29  action was taken by Daybreak towards Lacey for this incident to her knowledge.
30
31      During the interview with Jennifer Walker, she repeatedly told me that staff of Daybreak Youth Services is
32  told not to call 911 unless it is life or death.  Jennifer Walker explained that the administrators of Daybreak
33  Youth Services tell the employees that they are to contact a supervisor prior to calling 911, and that the
34  supervisors are not present and do not answer the phones, which prevents emergency services of being

091

# DISTRICT COURT OF THE STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

1   notified. Jennifer Walker said when incidents occur; they are documented in a program called "CareLogic,"

2   which stores the entire file of the clients. Jennifer Walker explained that after each day, the employee is

3   required to make notes in CareLogic for each client. These notes may be as simple as the fact that they had

4   no incidents or notable issues, or as detailed as they were involved in a crime or the victim thereof. Jennifer

5   Walker was unaware of what occurred to the information after it was submitted, and did not know if

6   administrators received any notifications or reviewed the information.

7

8       On July 18, 2018 at approximately 2300 hours, Savannah Paniagua knowingly and willingly agreed to

9   conduct a recorded interview at the Battle Ground Police Department located at 507 SW 1st Street.

10  Savannah is a current employee at Daybreak Youth Services in the capacity of a Behavioral Health

11  Technician and has been employed in this capacity since April of 2017.

12

13      Savannah Paniagua confirmed the previous statements provided by Jennifer Walker, stating that

14  employees would be reprimanded if not fired for deviating from the reporting requirements of notifying a

15  supervisor. Savannah Paniagua said she had personally attended several "staff meetings" wherein

16  supervisors and administrators with the facility directed staff to not call 911 without consulting with a

17  supervisor. Savannah Paniagua reiterated Jennifer Walker's complaint in that supervisors were rarely

18  present after business hours, and were often un-reachable to consult with when daily, if not more frequent

19  incidents occurred. Savannah Paniagua additionally confirmed the use of CareLogic for daily reporting of

20  clients. Savannah Paniagua believed that if an incident occurred, it should and more than likely would be

21  documented in CareLogic. Savannah Paniagua was unaware if these entries could be edited, deleted or

22  altered after being entered into this system.

23

24      On July 18, 2018 I conducted a search of the Law Enforcement Electronic Reporting System (EIS). I was

25  unable to locate a documented report of this incident involving Lacey Lynch and ▓▓▓▓▓▓▓▓

26

27     On July 19, 2018 I contacted Kris Goheen, who is the Department of Licensing Supervisor with DSHS.

28  Goheen confirmed that this incident had not been reported to CPS (DSHS).

29

30      With the assistance of Jennifer and a search of open source Facebook, I have identified the involved as

31  ▓▓▓▓▓▓ and Lacey Lynch.

32

33      On September 3, 2018 I received information from Jennifer Walker that she had spoken with a

34  previous employee, who had retained text messages pertaining to this incident. Through those text

## DISTRICT COURT OF THE STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

1   messages, Jennifer Walker was reminded that this incident was believed to have occurred on January 1,

2   2018 at approximately 2:20 PM. Jennifer Walker said she documented this incident in writing within the

3   CareLogic system under          file. Jennifer Walker provided me with the name and contact

4   information for Cathan Tautfest, who was employed with Daybreak Youth Services from approximately June

5   2017 to June 2018. With this information, Detective Beck with the Clark County Sheriff's Office made contact

6   and arranged to interview Cathan Tautfest. **The following was authored by Detective Beck in regards to**

7   **this interview;**

8   *"On 9/5/18, I was notified by CCSO Sgt. Luque that he was aware of a former employee of Daybreak named*

9   *Cathan Tautfest who may have some relevant information for our investigation. I spoke with Cathan on the*

10   *phone and arranged to meet later in the afternoon. At approximately 1500 hrs, I met Cathan at the Black*

11   *Rock Coffee Shop in downtown Vancouver, WA at 1001 Broadway Street. Cathan told me the following:*

12

13   *Cathan worked at the Daybreak facility for about a year beginning in June 2017 before leaving in June*

14   *2018. Cathan said while working at the facility, he witnessed several events that were concerning and he felt*

15   *like the Daybreak Facility was poorly managed. He told me he was not the only staff member concerned*

16   *about the safety and management at Daybreak and that he knew of several other staff members who had*

17   *resigned due to the poor conditions at the facility.*

18

19   *As an example, Cathan said Daybreak Facility Staff were not allowed to call 911 during emergencies without*

20   *prior approval from a manager and that they were threatened with their jobs if they violated the policy and*

21   *called 911. Cathan also said he was told several times by Daybreak administration that staff was not to*

22   *report incidents to law enforcement unless the victim wanted it reported. One time, Cathan was*

23   *approached by a resident wanted to report a serious assault to law enforcement where the boy was slashed*

24   *on his back by another resident using a pair of tweezers. When Cathan told his supervisor Cecee that the*

25   *resident wanted to report the assault to law enforcement, Cecee spoke with the assault victim alone for*

26   *several minutes. After Cecee returned, she told Cathan the victim no longer wanted to report the incident*

27   *and they were not going to file a police report.*

28

29   *I asked Cathan to tell me about how incidents are logged by staff at the facility. Cathan explained that the*

30   *front line staff that interacts with the residents the most is broken up into three shifts: Days, Swing and*

31   *Sunrise. Each shift completes reports and type notes called "Daily Shift Notes" into a web based computer*

32   *system named Care Logic. Inside the Care Logic program, there are several categories for the "Daily Shift*

33   *Notes." Staff uses the categories to document resident's behavior in the facility during their shift. In addition*

34   *to the "Daily Shift Notes," staff also completes "Incident Reports" for any incident involving self-harm,*

093

## DISTRICT COURT OF THE STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

1   assaults, sexual assault or damage to property. The "Incident Reports" are also completed on the Care

2   Logic computer system.

3

4   Cathan also told me Daybreak Facility Staff often communicate with each other using email. He thought the

5   email service for the organization was provided through Microsoft 365. I would later learn Staff email

6   addresses listed on the Daybreak website end in "@daybreakyouthservices.org." Cathan said each day a

7   summary of all the "Daily Shift Notes" and "Incident Reports" for each department is emailed by a staff

8   member on the sunrise shift to a "Treatment Team" email list in the organization email system. He said the

9   "Treatment Team" list consists of something like 94 people including the facility councilors, shift leads,

10  teachers and administration. Each person on the "Treatment Team" email list receives a daily summary of

11  all the incidents that occurred at the facility. The daily summary emails are broken down into a summary for

12  the boys side, the girls side and a summary of the ENT unit. The emails are usually sent sometime over night

13  between 11pm and 3am.

14

15  I began by asking if Cathan was aware of any inappropriate interactions between staff and residents at the

16  Daybreak Facility. He mentioned one staff member named "Lacey" had been getting massages from one of

17  the teen residents at the Daybreak Facility. Cathan said on January 1, 2018, while working at the facility, he

18  was contacted by another staff member named Jenny who said she had just witnessed something

19  concerning on video at the facility. Jenny had been working in the male side of the ENT medical unit and

20  another staff member named Lacey was working in the female side of the unit. Jenny had been watching

21  the video on a laptop of the female portion of the unit where Lacey was working. Jenny observed Lacey

22  with her shirt off, wearing a bra, being massaged by a resident named ███████ Cathan then came to Jenny's

23  unit and watched about 30 seconds of the video on Jenny's laptop with Jenny.

24

25  I asked Cathan to describe what he saw on the video. Cathan saw Lacey seated and a female resident who

26  he recognized as ███████ standing behind her. Lacy was wearing pants and a black bra, and had her shirt

27  off. There was a bottle of coco butter lotion on the floor next to them and it looked as if ███████ was using the

28  lotion to massage Lacey's shoulders. Cathan said it was completely inappropriate for a staff member to be

29  getting massaged by an underage resident who they supervised and had authority over. It made it worse

30  that the staff member was partially undressed in her underwear.

31

32  Cathan said he was upset by what he saw on the video and talked with Jenny about how it could be

33  reported to the Daybreak administration. They discussed sending emails to several managers at the

34  facility. He remembered mentioning sending the email to his manager Cecee (aka Cecilia Hubert), and

## DISTRICT COURT OF THE STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

1   *clinical directors by the names of Angela Ball and Christina Gjesvold.   Cathan does not know for certain if*

2   *Jenny sent the email as they discussed.*

3

4   *Later that day, after Cathan got home, he was still bothered by seeing Lacey undressed getting a massage*

5   *from one of the teenage residents so he sent a text message to his manager Cecee's cell phone*

6   *complaining about the incident.  Cathan still had the messages on his cell phone.  He allowed me to read*

7   *them and take pictures of them.  The messages appear to have been sent on 1/1/18 at 8:39pm to Cecee at*

8   *360-771-2440.  Text from the messages on Cathan's phone reads as follows:*

9

10

11   *Cathan:*                    *There is some seriously fucked up shit going on at daybreak.*

12   *Cathan:*                    *I can't condone this shit.*

13   *Cecee:*        *Like what.*

14   *Cathan:*     *Lacey was in her bra in the ent today having a client rub her down with lotion. Her bra and*

15                    *pants. 2:20pm. Ent girls side. Check the cameras.*

16   *Cecee:*        *Omg ok*

17   *Cathan:*                    *Is anything going to happen? Seriously asking.*

18   *Cecee:*        *I don't know anything until I look into stuff. I'm back Wednesday*

19   *Cathan:*        *If nothing happens then I'm going to be pissed.  Daybreak is on the path to get sued by*

20                    *pissed off parents.*

21   *Cathan:*                    *Many staff are ready to walk out.*

22   *Cecee:*        *It's not easy there right now.  Believe me I worked endless hours last*

23   *Cecee:*        *week. Hopefully we can get fully staffed. They quit as fast as I hire*

24   *Cecee:*        *them.*

25   *Cathan:*        *Please, at least write her up. If I walked around topless on the wing what would it get me?*

26                    *It's not ok.*

27   *There is a second string of messages dated 2/25/18 at 11:45 am:*

28   *Cathan:*                    *Was the lacey situation reported to the police?*

29   *Cecee:*        *HR will handle everything. Out of my hands now*

30

31   *Cathan explained to me he provided the specific location, date and time of the incident to Cecee so she*

32   *could view the incident on video.  Cathan told me the facility retains video camera footage of most of the*

33   *facility but that they overwrite the footage and erase the old video every three days.   Cathan sent the text*

## DISTRICT COURT OF THE STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF CLARK

1   *message to Cecee that night, so the video of Lacey being massaged could be viewed as soon as possible*
2   *and preserved for an investigation before it is erased.*
3
4   *Cathan told me he is not sure if Lacey was ever written up or if Cecee ever reported the incident to law*
5   *enforcement. Each time he asked Cecee about it, she told him the incident had been reported to the*
6   *Daybreak HR (Human Resources) department and they would take appropriate action.*
7
8   *A few days after viewing the video of Lacey, Cathan said he saw Lacey receiving another shoulder massage*
9   *from▆▆▆ in one of the day rooms. Lacey had her shirt on, but Cathan felt it was still not appropriate and*
10  *brought Cecee to witness it in person. Cathan said Cecee came to the day room and saw Lacey, a staff*
11  *member, getting her shoulders massaged by the same underage resident as in earlier incident seen on*
12  *video named▆▆▆ Cathan heard Cecee direct Lacey to complete a task somewhere else in the facility*
13  *over the radio and Lacey left the room. When Cathan asked Cecee again about how the Facility was*
14  *addressing the incidents, Cecee told her the HR investigation is still going on. Cathan said she did not hear*
15  *anything else about the massage incidents involving Lacey."*
16
17  **End of context.**
18
19  .        Based on the aforementioned, I believe there to be probable cause to access the Daybreak Youth
20  Services records, specifically CareLogic, for the documents pertaining to ▆▆▆ in attempt to obtain
21  records of this incident. I believe there to be probable cause to obtain the employee personnel files, and any
22  other documents involving the suspect Lacey Lunch. I additionally believe there to be probable cause to
23  document and record Daybreak Youth Services surveillance video for the date of January 1, 2018 in attempt
24  to locate this incident.
25
26          While conducting this investigation, I found there to be additional incidents, wherein the Daybreak
27  Youth Services facility and its respected members failed to report crimes against youth, specifically "abuse"
28  and "neglect" as defined per law. Interviews with current and prior staff show probable cause to believe that
29  administration staff, counselors, and other parties within Daybreak Youth Services have knowledge of the
30  criminal incidents occurring within the facility as they pertain to the juvenile victims via the daily email sent
31  as articulated in the interview with Cathan Tautfest. This email with the incidents has been stated to be sent
32  to the administrators, including, but not limited to Michael Trotter, Cecilia Hurbert, Angela Ball, and Annette
33  Klinefelter. Through this investigation, I have found that these incidents continue to show un-reported, and
34  at times appear to have been and continue to be secluded and minimized. Although the probable cause for