1

2

3

4

5

6

7

8    UNITED STATES DISTRICT COURT
     WESTERN DISTRICT OF WASHINGTON
9    AT TACOMA

10   DAYBREAK YOUTH SERVICES,
     individually and on behalf of its former and
11   current patients,

                                                NO. 3:19-cv-05521 BHS
12                Plaintiff,

                                                **SECOND SUPPLEMENTAL**
13        v.                                    **DECLARATION OF DAVID H.**
                                                **SMITH IN SUPPORT OF**
14   CHUCK ATKINS, in his official capacity as  **PLAINTIFF'S EMERGENCY**
     Clark County Sheriff, MIKE COOKE, in his   **MOTION FOR TEMPORARY**
15   official capacity as Clark County          **RESTRAINING ORDER**
     Undersheriff, and CHRISTOPHER LUQUE,
16   in his official capacity as Clark County
     Sheriff's Office Sergeant, ADAM BECK, in
17   his official capacity as Clark County Sheriff's
     Office Detective, and BRENT WADDELL, in
18   his official capacity as Clark County Sheriff's
     Office Sergeant,
19
                  Defendants.
20

21
          I, DAVID H. SMITH, hereby declare as follows:
22
          1.     I am one of the attorneys representing Plaintiff in this matter. I am over 18 years
23
     of age, competent to testify and make this statement upon personal knowledge.
24
          2.     Attached as Exhibit X is true and correct copy of the Clark County Sheriff's
25
     Office's Motion for Order of Good Cause filed in the Clark County Superior Court case number
26

SECOND SUPPLEMENTAL DECLARATION OF DAVID H. SMITH
IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER - 1

GARVEY SCHUBERT BARER, P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

1    18-2-05488-9 today, June 19, 2019, by the Clark County Prosecuting Attorney's Office. I

2    received this pleading and related documents at approximately 11:00 a.m. via email from

3    Daybreak's former counsel.

4         I declare under penalty of perjury under the laws of the state of Washington that the

5    foregoing is true and correct.

6         DATED this 19th day of June, 2019.

7

8                                         David H. Smith

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SECOND SUPPLEMENTAL DECLARATION OF DAVID H. SMITH
IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER - 2

GARVEY SCHUBERT BARER, P.C.
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

1

## CERTIFICATE OF SERVICE

2        I hereby certify that on June 19, 2019, I caused to be electronically filed the foregoing

3    Supplemental Declaration of David H. Smith In Support of Plaintiff's Emergency Motion for

4    Temporary Restraining Order with the Clerk of the Court using the CM/ECF system which

5    causes parties who are registered ECF participants to be served by electronic means.

6

7        Dated this 19th day of June, 2019, at Seattle, Washington.

8                               GARVEY SCHUBERT BARER

9

10                            By *s/David H. Smith*
                                  David H. Smith

11

12

13

14    GSB:10356760.1

15

16

17

18

19

20

21

22

23

24

25

26

SECOND SUPPLEMENTAL DECLARATION OF DAVID H. SMITH
IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER - 3

GARVEY SCHUBERT BARER, P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

# EXHIBIT X

**E-FILED**

**06-19-2019, 09:47**

**Scott G. Weber, Clerk**

**Clark County**

HON. JENNIFER SNIDER
9:00am, July 5, 2019
With Oral Argument

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF CLARK

| | |
|---|---|
| DAYBREAK YOUTH SERVICES, a Washington Public Benefit Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CLARK COUNTY SHERIFF'S OFFICE,<br><br>Defendant. | No. 18-2-05488-9<br><br>DEFENDANT'S MOTION FOR ORDER OF GOOD CAUSE |

Defendant CLARK COUNTY SHERIFF'S OFFICE (CCSO) by and through

undersigned counsel, brings this Motion for Order of Good Cause.

## I.   INTRODUCTION AND RELIEF REQUESTED

Last fall, Daybreak Youth Services (Daybreak) filed a Complaint for Injunctive Relief

and brought a motion before this Court seeking to enjoin CCSO from "reviewing, releasing, or

using certain privileged, personal, medical, and other confidential records it seized from

Daybreak's facilities under a search warrant". *See* Complaint for Injunctive Relief. After a

DEFENDANT'S MOTION FOR ORDER OF GOOD
CAUSE - 1 of 14

CLARK COUNTY PROSECUTING ATTORNEY
CIVIL DIVISION
1300 FRANKLIN ST., SUITE 380 • PO BOX 5000
VANCOUVER, WASHINGTON 98666-5000
(564) 397-2478 (OFFICE) / (564) 397-2184 (FAX)

1  hearing before Judge Lewis, the court issued an order finding that the scope of the CCSO search
2  warrants were not overbroad and denied Daybreak's motion for a temporary restraining order.
3  *See* Order on Plaintiff's Motion for Temporary Restraining Order.

4          On Friday, June 7, 2019, Daybreak filed another motion for a temporary restraining
5  order, this time with the Western District of Washington, to restrain CCSO personnel from using,
6  disclosing or redisclosing any of the records or documents obtained through the same search
7  warrants that were the subject of Daybreak's action before this court under 42 U.S.C. § 290dd-2.
8  *See* Declaration of Leslie Lopez in Support of Defendant's Motion for Order of Good Cause at ¶
9  2. The CCSO defendants filed an opposition to that motion arguing that Daybreak's action in
10  federal court is without standing and merit. *Id.* at ¶ 3.

11          Daybreak did not raise an issue regarding confidentiality under 42 U.S.C. § 290dd-2
12  when it filed its Complaint for Injunctive Relief in this Court in September, 2018. Under federal
13  law, it is the treatment facility that is obligated to maintain the confidentiality of the patient
14  information. Therefore, Daybreak should have advised CCSO before the search warrants were
15  served, at the time the search warrants were served on September 11, 2018, or during the
16  pendency of this action in September, 2018 regarding the requirements of 42 U.S.C. § 290dd-2.
17  Nevertheless, now that Daybreak has raised this issue, CCSO seeks confirmation from the court
18  of good cause for the order.

19          CCSO files the present motion to confirm this court's prior determination that CCSO's
20  search warrants were not overbroad and to find that good cause exists to retain and disclose, with
21  appropriate redactions, these records for law enforcement and criminal justice purposes.

22          Under federal law, certain information and medical records from a federally assisted
23  substance use treatment program are considered confidential and protected from disclosure. *See*
24  42 U.S.C. § 290dd-2; 42 CFR Part 2. There are a number of exceptions to the confidentiality of
25  this information, including where law enforcement seeks to investigate a crime on the premises
26  of the substance use treatment program. Pursuant to this exception, CCSO brings the present

DEFENDANT'S MOTION FOR ORDER OF GOOD
CAUSE - 2 of 14

motion to request the court issue an order addressing as follows:

1. The records and documents seized by the CCSO from its search warrant were seized for good cause pursuant to federal regulations;

2. Any records containing information protected from disclosure under federal regulations must be safeguarded and filed under seal and redacted in public records;

3. Confirm the process for CCSO to return to Plaintiff records containing protected information that is not necessary for purposes of criminal investigation or prosecution; and

4. Allow for the interviews of current and former Daybreak employees related to CCSO's investigation of Daybreak, without prevention or interference by Daybreak or its attorneys.

## II. STATEMENT OF FACTS

### A. CCSO Initiates Criminal Investigation of Incidents at Daybreak.

On or about June 12, 2018, CCSO Enforcement Sergeant Chris Luque was tasked with starting an investigation into Daybreak, specifically into reports that Daybreak and its employees were not reporting incidents involving extremely serious incidents at its facility including alleged rapes, assaults, sexual assaults and sexual misconduct with a minor. *See* Declaration of Chris Luque in Support of Defendant's Motion for Order of Good Cause, ¶ 3.

Between June 12, 2018, and the beginning of September, 2018, Sergeant Luque and other members of the Clark County Sheriff's Office (CCSO) Major Crimes Team conducted an investigation into the underlying serious incidents occurring at Daybreak. *Id.* at ¶ 4. The focus of the investigation was to determine if Daybreak's employees were reporting these serious incidents to the proper authorities. *Id.* at ¶ 4. The concern was that the juvenile patients and staff were at risk of physical harm based on the failure of Daybreak to report serious crimes, including whether Daybreak management had directed staff not to call 911 for assistance from law enforcement. *Id.* at ¶ 4.

DEFENDANT'S MOTION FOR ORDER OF GOOD CAUSE - 3 of 14

1  During the investigation, Sergeant Luque learned of approximately seventeen (17)
2  serious incidents that occurred at Daybreak, many of which were not reported to Child Protective
3  Services (CPS) or law enforcement. *Id.* at ¶ 5. Specific details of his investigation into these
4  serious incidents and the crimes of failure to report are in the Affidavits in Support of the eight
5  search warrants he had reviewed and signed by Clark County Superior and District Court Judges.
6  *See* Exhibit 1 to Luque Declaration[1]. The Affidavits contain significant and detailed accounts of
7  the incidents that occurred. *Id.*, Luque Declaration at ¶ 5.

8  During his investigation, Sergeant Luque's noticed an overriding theme: Daybreak staff
9  members were told not to call 911 when incidents occurred, and employees/management failed
10  to report these serious incidents as they were required to by State Law. *Id.*

11  After CCSO initiated its investigation, Daybreak's employees cooperated with the
12  investigation and provided incident reports and other records including video taken at the facility
13  in order to assist the investigation. *Id.* at ¶ 6. For example, Sergeant Luque started to investigate
14  a sexual assault in June, 2018, in which a juvenile patient of Daybreak was sexually assaulted by
15  another resident in his sleep. *Id.* During Sergeant Luque's investigation, Daybreak's
16  Compliance Officer Michael Trotter voluntarily gave Sergeant Luque a copy of an Incident
17  Report dated April 10, 2018, concerning the sexual assault. *Id. See also,* Exhibit 2 to Luque
18  Declaration. Mr. Trotter provided the report to Sergeant Luque in its un-redacted state. *See*
19  Luque Declaration at ¶ 6.

20  In addition, Mr. Trotter informed Sergeant Luque that he had previously reviewed the
21  video and agreed there were multiple details that corroborated the juvenile victim's statements.
22  *Id.* at ¶ 7. Mr. Trotter told Sergeant Luque he would preserve the video and provide the officer
23  with a copy. *Id.* At no time did Mr. Trotter tell CCSO he could not provide the incident report

24

25  [1] Defendant attaches the search warrants as Exhibit 1 to Sergeant Luque's Declaration and will file it with the Court.
However, Defendant will not file the affidavits in support of the search warrants as Exhibit 2 due to the sensitive
26  nature of its contents. Defendant will bring a redacted copy for the court and counsel should the court wish to
review it in-camera. Further, Defendant will file a Motion for a Protective Order to be heard at the same time as this
motion.

DEFENDANT'S MOTION FOR ORDER OF GOOD
CAUSE - 4 of 14

1  or video to Sergeant Luque unless CCSO obtained a special court order under 42 CFR, Part 2.
2  *Id.*

3     During Sergeant Luque's interview of Mr. Trotter, he informed Sergeant Luque that he
4  had contacted CPS to report the sexual assault. *Id.* at ¶ 8.  On June 18, 2018, Sergeant Luque
5  contacted CPS to confirm whether they had received the report of the sexual assault from
6  Daybreak. *Id.* at ¶ 8.  Sergeant Luque was told by Kris Goheen, Supervisor of the Department of
7  Licensing Services with CPS for Daybreak, that she was unable to find any reports from
8  Daybreak concerning this incident. *Id.* at ¶ 8; *see also,* Exhibit 3 to Luque Declaration.

9     On or about August 22, 2018, Daybreak advised CCSO that it would no longer provide
10  documents or video without a search warrant. *Id.* at ¶ 9.  Daybreak again did not advise CCSO
11  of any concerns with respect to patient confidentiality. *Id.*  Having learned that Daybreak would
12  no longer provide records and video relating to the investigation, on September 7, 2018, Sergeant
13  Luque authored two (2) search warrants and supporting affidavits for the release of records from
14  Qualifacts Systems, Inc. (CareLogic - Daybreak's records management system), and Microsoft
15  Corporation to obtain emails to/from certain Daybreak employees suspected to be involved in the
16  serious incidents or for failing to report the serious incidents as outlined in the search warrants
17  and affidavits. *Id.* at ¶ 10.  Clark County Superior Court Judge Robert Lewis signed these
18  warrants. *Id.* The warrants were served on these entities on September 11, 2018. *Id.*

19     Also on September 7, 2018, Sergeant Luque authored six (6) search warrants and
20  supporting affidavits in order to search Daybreak Youth Services for evidence pertaining to the
21  investigation of Daybreak's failure to report. *Id.* at ¶ 11.  Specifically, the search warrants
22  sought records indicating the dates that specific juvenile patients were at the facility, internal
23  memos, emails, investigations and other records pertaining to the serious incidents in which the
24  juvenile patients were victims, shift notes and incident reports entered into CareLogic,
25  photographs and digital data and surveillance video concerning any of the serious incidents. *Id.*
26  The search warrants also sought these items in addition to emails contained on computers at

DEFENDANT'S MOTION FOR ORDER OF GOOD
CAUSE - 5 of 14

CLARK COUNTY PROSECUTING ATTORNEY
CIVIL DIVISION
1300 FRANKLIN ST., SUITE 380 • PO BOX 5000
VANCOUVER, WASHINGTON 98666-5000
(564) 397-2478 (OFFICE)  /  (564) 397-2184 (FAX)

1    Daybreak that discussed any of the serious incidents and/or whether the serious incidents had
2    been reported as required by state law.  *Id.*  Finally, search warrants sought medical records of
3    certain juvenile patients; however, these records were not sought nor reviewed for the purpose of
4    determining the type of treatment the juvenile patients were obtaining but for the sole purpose of
5    determining whether particular juvenile patients were provided medical treatment when they
6    suffered injuries during particular serious incidents.  *Id.*  These search warrants were reviewed by
7    a Clark County District Court Judge who signed the warrants authorizing the searches.  *Id.*

8            Because Daybreak had stopped voluntarily providing the records and video needed for
9    the investigation and indicated it would not provide any such materials without a search warrant,
10   the only avenue to obtain the necessary investigative material was to obtain a search warrant.  *Id.*
11   at ¶ 12.

12           The search warrants provided for searching the computers of Daybreak and its
13   employees.  *Id.* at 13.  Accordingly, CCSO requested Daybreak's IT employee download the
14   contents of the computers of the listed Daybreak employees in the search warrant onto hard
15   drives.  *Id.*  Further, the Daybreak's IT employee was asked to download the email accounts of
16   only the Daybreak employees listed in the search warrant.  *Id.*

17           The information from the computers of the specifically named employees listed on the
18   warrants was placed onto hard drives and into evidence along with the other seized items.  *Id.* at
19   ¶ 14.  The hard drives, computers and flash drives have not been accessed, reviewed or disclosed
20   to anyone.  *Id.*  None of the information contained on the hard drives, computers and flash drives
21   was utilized in the investigation of Daybreak.  *Id.*  Further, none of the information contained on
22   the hard drives, computers and flash drives was provided to the Clark County Prosecuting
23   Attorney's Office.  *Id.*

24           CCSO did not use any patient communications provided during counseling with any
25   substance use disorder treatment counselor in its investigation of Daybreak.  *Id.* at ¶ 16.  Further,
26   CCSO did not provide any patient communications referencing a counseling session to the

DEFENDANT'S MOTION FOR ORDER OF GOOD
CAUSE - 6 of 14

1  Prosecuting Attorney's Office. *Id.* Further, none of the evidence from CCSO's investigation is
2  based on the fact that juveniles received substance use disorder treatment at Daybreak nor is it at
3  all relevant to the investigation of Daybreak and its failure to report serious incidents. *Id.* at ¶ 17.
4  The fact that juvenile patients were receiving substance use disorder treatment was not the focus
5  of the investigation, nor did it have any weight, bearing or influence on the investigation. *Id.* It
6  was not CCSO's intention to use any information in any substance use disorder treatment records
7  to investigate or prosecute juvenile patients. *Id.*

8  **B. CCSO Refers Investigations to Prosecuting Attorney's Office for Review.**

9      On April, 2019, Sergeant Luque referred his investigation with specific documents to the
10  Prosecuting Attorney's Office for review of potential criminal charges related to failure to report.
11  *Id.* at ¶ 18. The evidence provided to the Prosecuting Attorney's Office did not rely on any
12  information contained in juvenile patient records except for the purpose of demonstrating the
13  dates the particular juvenile was at the Daybreak facility. *Id.* To the extent any information
14  regarding a juvenile patient's treatment for substance use disorder treatment is somehow
15  mentioned in the documents forwarded to the Prosecuting Attorney's Office, this information
16  will be redacted because beyond the dates the juvenile patient was in the facility, any diagnosis
17  or treatment is not pertinent or relevant to the investigation of Daybreak and its failure to report
18  serious incidents. *Id.*

19      In April, 2019, Sergeant Luque referred his investigation with specific documents to the
20  Prosecuting Attorney's Office for review of potential criminal charges related to failure to report.
21  *Id.* at ¶ 20. The documents and information provided to the PA's Office did not include any
22  information contained on the hard drives of any of the computers seized from Daybreak on
23  September 11, 2018. *Id.* at ¶ 19.

24      On May 14, 2019, Sergeant Luque sent letters to various former and existing employees
25  at Daybreak seeking to interview them concerning the investigation of Daybreak. *Id.* at ¶ 21; *see*
26  *also* Exhibit 4 attached to Luque Declaration. On May 22, 2019, Sergeant Luque received a

DEFENDANT'S MOTION FOR ORDER OF GOOD
CAUSE - 7 of 14

1 | letter from Daybreak's attorney Justin M. Thorp informing him that the employees were

2 | prohibited from talking with him until an order under 42 CFR Part 2 was entered by the Court.

3 | *Id.* at ¶ 21; *see* Exhibit 5 attached to Luque Declaration.

4 | **C. Confidential Information Contained In Records Seized from Daybreak Have Not Been

5 | Publically Disclosed.**

6 | Since September 2018, CCSO has received fourteen (14) public disclosure requests from

7 | various individuals for records concerning Daybreak. *See* Declaration of Sarah Leffler in Support

8 | of Defendant's Motion for Order of Good Cause at ¶ 3. Consistent with the Sheriff's Office

9 | Public Disclosure Unit practices, the requested records were collected and reviewed for

10 | applicable exemptions from disclosure. *Id.* The CCSO Public Records Program Coordinator,

11 | Sarah Leffler, determined that Daybreak Youth Services is a mental health service agency as

12 | defined in RCW 70.02.010(29) and that all patient identities and patient records were exempt

13 | from disclosure pursuant to RCW 70.02.230(1). *Id.*

14 | On September 13, 2018, Sarah Leffler sent an email to the staff in the Sheriff's Office

15 | Public Disclosure Unit explaining Daybreak is a mental health service provider and, accordingly,

16 | certain information in Daybreak's records are exempt from disclosure. *Id. See also,* Exhibit 1

17 | attached to Leffler Declaration.

18 | CCSO asserted confidentiality of all patient identifying information, inclusive of their

19 | families' identifying information, and redacted this information from the records. *Id.* at ¶ 4.

20 | Additionally, patient treatment records were redacted or entire pages withheld. *Id.* Exemption

21 | logs identifying these statutory protections were provided with each production of redacted

22 | records. *Id.* None of Daybreak's minor patient's identifications or their family identifications

23 | have been released; no counseling records or records identifying mental health or substance use

24 | disorder treatment records have been provided in response to a Chapter 42.56 RCW public

25 | records request. *Id. See also,* Exhibit 2 to Leffler Declaration.

26 | / / /

DEFENDANT'S MOTION FOR ORDER OF GOOD
CAUSE - 8 of 14

1

### III.   ARGUMENT

2
3

**A. CCSO Had Good Cause Under Federal Law to Obtain Search Warrants for Plaintiff's Records.**

4       Federal law provides patient identifying information from federally assisted substance

5   use disorder treatment providers or programs is considered confidential information.  42

6   U.S.C.A. § 290dd-2(a).  The purpose of this confidentiality provision is to provide patients with

7   the confidence that their treatment is protected from disclosure in order to make it easier for

8   patients to seek substance abuse treatment.  *See United States v. Eide,* 875 F.2d 1429, 1436 (9th

9   Cir. 1989).

10       In relevant, part, the law states as follows:

11       Records of the identity, diagnosis, prognosis, or treatment of any patient which
        are maintained in connection with the performance of any program or activity
12       relating to substance abuse education, prevention, training, treatment,
        rehabilitation, or research, which is conducted, regulated, or directly or indirectly
13       assisted by any department or agency of the United States shall, except as
        provided in subsection (e), be confidential and be disclosed only for the purposes
14       and under the circumstances expressly authorized under subsection (b).
15

16   42 U.S.C.A. § 290dd-2(a).  For purposes of the present motion, CCSO understands that Plaintiff

17   would qualify as a federally assisted program under the statute.

18       Although the patient identifying and treatment is generally protected, a federal assisted

19   facility may disclose confidential information where certain exceptions are met under federal

20   law.  Disclosure is "authorized by an appropriate order of a court of competent jurisdiction after

21   application" upon showing "good cause therefor, including the need to avert a substantial risk of

22   death or serious bodily harm."  42 U.S.C. § 290dd-2(b)(2)(C).  The statute states further:

23       In assessing good cause, the court shall weigh the public interest and the need for
        disclosure against the injury to the patient, to the physician-patient relationship,
24       and to the treatment services.  Upon the granting of such order, the court, in
        determining the extent to which any disclosure of all or any part of any record is
25       necessary, shall impose appropriate safeguards against unauthorized disclosure.
26

        *Id.*

DEFENDANT'S MOTION FOR ORDER OF GOOD
CAUSE - 9 of 14

Pursuant to the authority granted by 42 U.S.C. § 290dd-2, the federal government issued federal regulations providing for the standard and procedures for issuance of a court order authorizing disclosure and use of records "to investigate or prosecute a program or the person holding the record". 42 CFR §§ 2.61-2.67.

To make a determination of good cause, the regulation provides that a court must find that: (1) other ways of obtaining the information are not available or would not be effective; and (2) the public interest and need for the disclosure outweighs the potential injury to the patient, the physician-patient relationship and the treatment services. 42 CFR § 2.66(c), 2.64(d), 2.64(e). Further, in every case, regardless of the purpose of the request, the court is required to narrowly limit disclosure and use of the records. 42 CFR § 2.64(e). The court must also limit the scope of patient records disclosed to only "those parts of the patient's record which are essential to fulfill the objective of the order." 42 CFR § 2.64(e)(1).

Here, CCSO clearly had good cause to obtain and retain records seized under the duly authorized search warrants. As detailed in the attached declarations and supporting exhibits, the information sought was necessary to obtain material evidence relevant to the crimes being investigated. CCSO Sergeant Luque received credible and concerning information regarding multiple events of serious incidents occurring at Daybreak. The incidents included allegations of rape, sexual assault, and sexual misconduct. Daybreak understood the seriousness of this investigation when it initially cooperated with the CCSO regarding the investigation. However, when the investigation led to concerns that Daybreak was failing to report serious incidents occurring at the premises, Daybreak's cooperation ended.

Since Daybreak was no longer cooperative in the investigation, CCSO determined it was necessary to obtain records and video from Daybreak to further investigate the numerous incidents in which Daybreak had failed to report serious crimes that were occurring within its facility. Nothing in the affidavits state CCSO was attempting to obtain records in order to prosecute the patients, let alone for any drug crimes, or that CCSO was seeking specifically drug treatment counseling records concerning any patient. Instead, CCSO was seeking the search

DEFENDANT'S MOTION FOR ORDER OF GOOD CAUSE - 10 of 14

1   warrants because they were told they would not get the records otherwise, and they needed to

2   investigate Daybreak's employees' continued failure to report serious incidents to law

3   enforcement or CPS.

4        In addition, the search warrants themselves state the signing judge has determined there is

5   "good cause" for the search warrant. *See* Exhibit 1. Therefore, the judges who signed the search

6   warrants did in fact determine there was good cause for obtaining the records. Further, after

7   Daybreak filed a temporary restraining order with this court, Judge Lewis again confirmed that

    there was good cause to obtain the search warrants and that they were not "overly broad".

8        There was and remains a clear public interest in obtaining these records in order to

9   investigate the numerous incidents in which Daybreak had failed to report serious crimes

10  occurring on the premises of the facility. This information could not be obtained from other

11  sources since Daybreak has refused to continue cooperating in the investigation absent a court

12  order under 42 U.S.C. § 290dd-2. In balancing the interests of the patients' confidentiality,

13  CCSO has taken all necessary and appropriate steps to maintain the confidentiality of their

14  identifying information as well as any treatment records. Thus, CCSO has met the requirements

15  of establishing good cause for seizing Daybreak's records pursuant to the previously authorized

16  search warrants.

17  **B. Records Obtained By Search Warrant from Plaintiff Must be Safeguarded as Under
       Seal and Redacted to Protect Confidential Information.**

18

19       Federal law requires that any protected information obtained through a court order must

20  include other safeguards to protect the patients and their treatment information. Specifically, the

21  records can be disclosed only to those "whose need for the information is the basis for the order."

22  42 CFR § 2.64(e)(2). The order must also include other limiting measures needed to protect "the

23  patient, the physician-patient relationship and the treatment services." 42 CFR § 2.64(e)(3).

24       First, the records seized from Daybreak and referred to the Prosecuting Attorney's Office

25  contain limited information regarding patient identifying information linking the patient to

26  Daybreak. However, given the requirements under federal law, the CCSO has affirmed that it

DEFENDANT'S MOTION FOR ORDER OF GOOD
CAUSE - 11 of 14

1 | will take all necessary steps to redact any diagnosis or treatment that is not pertinent or relevant
2 | to the investigation of Daybreak and its failure to report serious incidents. Further, CCSO will
3 | abide by any other safeguards required by the court in forwarding information to the Prosecuting
4 | Attorney's Office.

5 | With respect to records requested under the Public Records Act, CCSO has asserted and
6 | will continue to assert confidentiality of all patient identifying information, inclusive of their
7 | families' identifying information, and treatment records. Therefore, CCSO will use sufficient
8 | safeguards to continue protecting patient identifying and treatment information from records
9 | seized pursuant to its search warrants.

10 | **C. CCSO Requests a Court Ordered Procedure to Redisclose Certain Records, Return**
11 | **Certain Records Obtained by Search Warrants, Allow Interviews of Current and Former Daybreak Employees, and Notification to Patients.**

12 | Assuming this Court confirms that CCSO had good cause to seize records pursuant to the
13 | court-ordered search warrants, CCSO seeks guidance from the Court on additional procedures
14 | relating to these records. First, Defendants seek a court order confirming the return or
15 | destruction of hard drives containing mirrored copies of electronic data from Daybreak. CCSO
16 | has determined that it does not need this information as part of its criminal investigation. As
17 | stated earlier, no one in at CCSO has searched or reviewed the contents of the hard drives or
18 | disclosed the contents of the hard drives to anyone. Therefore, CCSO seeks to return or destroy
19 | these hard drives.

20 | In addition, CCSO seeks to disclose some of the records seized from Daybreak that has
21 | been used or reviewed in connection with CCSO's investigation. Specifically, for records that
22 | may be referred to the Prosecuting Attorney's Office for review and charging, CCSO requests a
23 | Court order on the redaction of patient treatment information and the filing of a protective order
24 | for confidential information in any subsequent criminal action.

25 | Further, CCSO seeks to interview current and former Daybreak employees as part of its
26 | investigation of Daybreak. CCSO requests that Daybreak or its attorneys not prevent or interfere

DEFENDANT'S MOTION FOR ORDER OF GOOD
CAUSE - 12 of 14

1 | in these interviews.

2 | Finally, when the purpose of the disclosure is the criminal investigation or prosecution of
3 | a Part 2 program or record holder, advance notice is not required, but the record holder and all
4 | SUD patients whose records were seized "must be afforded an opportunity to seek revocation or
5 | amendment of that order, limited to the presentation of evidence on the statutory and regulatory
6 | criteria for the issuance of the court order." 42 CFR § 2.66(b).  Here, the records holder,
7 | Daybreak, is being afforded an opportunity to seek revocation or amendment of the court order
8 | regarding the records seized from Daybreak.  However, CCSO requests a court order providing
9 | for a specific procedure to notify patients of their right to seek revocation or amendment of the
10 | Court's order.

## IV.   CONCLUSION

12 | For all of the foregoing reasons, CCSO respectfully requests the Court grant this Motion
13 | for Order Under 42 CFR Part 2 for Good Cause.

14 | Dated this 19th day of June, 2019.

16 | *s/ Leslie Lopez*
Leslie Lopez, WSBA #46118
17 | Deputy Prosecuting Attorney
Clark County Prosecutor's Office – Civil Division
18 | PO Box 5000
Vancouver WA  98666-5000
19 | Tele:   (564) 397-2478
Email: leslie.lopez@clark.wa.gov
20 |

21 | *Attorney for Defendant Clark County*
*Sheriff's Office*

DEFENDANT'S MOTION FOR ORDER OF GOOD
CAUSE - 13 of 14

**CERTIFICATE OF SERVICE**

On this 19th day of June, 2019, I hereby certify that I caused service of the foregoing MOTION FOR ORDER OF GOOD CAUSE to be made on all parties of record via electronic mail and U.S.P.S. regular mail as follows:

Bradley W. Anderson
Phillip J. Haberthur
805 Broadway Street, Suite 1000
PO Box 1086
Vancouver, WA 98666
Emails: philh@landerholm.com; brad.andersen@landerholm.com

Also on this 19th day of June, 2019, I provided a courtesy copy of the foregoing MOTION FOR ORDER OF GOOD CAUSE to the following individuals in the related USDC Western District of Washington at Tacoma Case #3:18-cv-05521-BHS via electronic mail only as follows:

David H. Smith
Diana S. Breaux
Garvey Schubert Barer, P.C.
1191 Second Avenue, 18th Fl.
Seattle, WA 98101-2939
Emails: DSmith@gsblaw.com; DBreaux@gsblaw.com; PShillington@gsblaw.com; BRakes@gsblaw.com; vwei@gsblaw.com; kfrancisco@gsblaw.com

*s/ Pamela Hamilton*
Pamela Hamilton, Paralegal

DEFENDANT'S MOTION FOR ORDER OF GOOD
CAUSE - 14 of 14